**Gabriel SAS, Plaintiff,**

v.

**TRINTEX, Defendant.**

**No. 88 Civ. 2590 (GLG).**

United States District Court, S.D. New York.

March 28, 1989.

Law Offices of Donald L. Sapir, White Plains, N.Y. (Donald L. Sapir, William D. Frumkin, of counsel), for plaintiff.

Hertzog, Calamari & Gleason, New York City (Peter E. Calamari, Anthony L. Paccione, of counsel), for defendant.

## OPINION

GOETTEL, District Judge.

This case presents itself in a most unusual procedural posture. The action is a typical employment discharge case in which the plaintiff claims he was discharged not for the stated reasons but because of invidious discrimination. The plaintiff injured a fellow employee during a physical altercation between the two. Plaintiff thereafter was discharged. He claims that, because the injured employee was not discharged as well, the discharge was discriminatorily based on plaintiff's religion (Jewish) and national origin (Israeli) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.[1]

As is increasingly customary in these employment cases, a second claim—based on the same facts and, for all intents and purposes, indistinguishable from the first— is added under 42 U.S.C. § 1981 ("section 1981"). See Shaare Tefila Congregation v. Cobb, 481 U.S. 615, 107 S.Ct. 2019, 2022, 95 L.Ed.2d 594 (1987) (holding members of Jewish faith constitute cognizable racial group for purposes of federal civil rights law). Notwithstanding the constitutional gloss placed on this case by the section 1981 add-on (via the Thirteenth Amendment), this case looks like a title VII duck, walks like a Title VII duck, and quacks like a Title VII duck. Whether it can and should nonetheless be called a section 1981 duck is a proposition with which this court harbors certain reservations.

This add-on tactic, of course, has strategic underpinnings. The addition of a section 1981 claim opens the door to far broader legal relief (i.e., compensatory and punitive damages) than exists under Title VII. Further, and as a result of the foregoing, a section 1981 claim, unlike one under Title VII, secures a right to trial by jury. We recently had occasion to take issue with this strategic use of our Nation's civil rights law. In Wade v. Orange County Sheriff's Office, 690 F.Supp. 176 (S.D.N.Y. 1987), we concluded that in a Title VII/section 1981 or 1983 case the court, as the exclusive trier of fact on the Title VII claim, was not bound by the jury's findings of fact on the parallel section 1981 or 1983 claim. After noting that plaintiff's Seventh Amendment jury rights had been protected in that case since the section 1981/1983 claim was decided prior to our decision on the equitable count, id. at 179, we went on to reject plaintiff's contrary thesis as to the jury's proper role in such cases, animated chiefly by due concern for Congress's implicit desire, expressed in their decision to limit Title VII to equitable relief only, to have the court and not a jury decide Title VII claims. Id. Although the disposition of Wade was affirmed by the Second Circuit, the panel, Judge Kearse writing, disagreed with this court's assessment of the proper balance to be struck in determining factual issues in a Title VII/section 1981 or 1983 case. Judge Kearse, arguably in dicta, apparently believes that so long as a civil rights claim can be appended to what admittedly is at its core a Title VII complaint, then the duty of the district court to weigh the facts on

---

[1] The New York Division of Human Rights found that there was no evidence to support such a claim, finding instead that plaintiff was discharged because he caused an injury to a fellow employee.

the Title VII cause is eviscerated and the district judge is rendered nothing other than a potted plant (to borrow a phrase), obliged to accept the jury's findings of fact even on matters not within its province. *Wade v. Orange County Sheriff's Office*, 844 F.2d 951, 954–55 (2d Cir.1988).

Certainly, reasonable people could (and obviously did) disagree with this court's conclusions in *Wade*, and the panel's assessment on appeal may well carry the day on this issue. We note only that the debate seems far from over, *see Dwyer v. Smith*, 867 F.2d 184 (4th Cir.1989) (disagreeing with panel's conclusions in *Wade*), and that other courts have approached the tensions inherent in a combined Title VII/section 1981 or 1983 case from a different perspective that may ultimately moot the jury/judge concern confronted in *Wade*. *See generally* C. Richey, Manual on Employment Law and Civil Rights Actions in Federal Courts § A.VII. (Fed.Jud.Ctr. Jan. 1988) (discussing cases holding that Title VII is exclusive remedy on employment claims, in essence "preempting" use of section 1981 or 1983). *Accord Zombro v. Baltimore City Police Dep't*, 868 F.2d 1364 (4th Cir.1989). As will be seen, however, these issues do not present themselves for resolution in the instant proceeding.

Following the usual pretrial discovery, the case at bar was noticed for trial. The defendant made several nuisance-value settlement offers, which was consistent with its view that there was no impermissible discrimination in the discharge and that, in any event, the plaintiff could not demonstrate any damages since he found equally remunerative employment soon after his termination. These offers were rejected by plaintiff's counsel, who indicated that he was looking for a substantially larger sum of money. Defendant then made a final settlement offer of $5,000 and, when that was not accepted, served an offer of judgment for that amount pursuant to Fed.R. Civ.P. 68.

A final pretrial conference was held on December 1, 1988, with the attorneys aware that they would be selecting a jury on the following Monday. On that date, plaintiff's counsel indicated, to defendant's counsel's surprise, that he formally had accepted the offer of judgment and had prepared for the court a proposed judgment which included costs and attorney's fees. Plaintiff's counsel made it clear that he would be seeking very substantial attorney's fees despite the recovery of a relatively insignificant judgment. Defendant's counsel objected to this, stating that he had intended his offer of judgment to be inclusive of all costs and attorney's fees, and attempted orally to revoke the offer. Plaintiff's counsel responded that revocation was untimely because the offer already had been accepted.[2] This court entered a judgment on December 6 in plaintiff's favor based on the acceptance of the offer of judgment and providing, in addition, for an unspecified amount of costs, including attorney's fees.

Counsel for defendant, on December 19, 1988, moved to rescind the offer of judgment and to modify the judgment already entered. Plaintiff's counsel cross-moved for attorney's fees in the amount of $33,-144.50, plus disbursements of $1,174.98.[3] Defendant's argument on the motion to rescind or modify the judgment is, essentially, that plaintiff's counsel knew that the offer of judgment was intended to be a total figure, including costs and attorney's fees, and that plaintiff's counsel was guilty of a sharp practice in accepting the offer which, by its terms, was not so limited. Defendant requests that the judgment filed eliminate any reference to additional payments for costs or attorney's fees and that

**2.** Defendant's counsel argues that the acceptance, a copy of which already had been mailed to him, should not be considered effective until December 2 when it appeared on the court's dockets. Based on personal observation of the events, it is clear that plaintiff's counsel had filed his acceptance prior to the pretrial conference on December 1. However, since it was then after 5:00 p.m., the official closing time of

the clerk's office, the acceptance did not get docketed until December 2.

**3.** Half of these costs were expended in going to California to take the deposition of the injured employee, who was no longer in the defendant's employ.

the plaintiff be deemed to have accepted that sum in full satisfaction of all those claims. Alternatively, he argues that defendant be allowed to withdraw the offer of judgment and have the parties belatedly proceed to trial.

This case is controlled in great part by the decision of the Supreme Court in *Marek v. Chesny*, 473 U.S. 1, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985). In the context of a civil rights claim (for the wrongful killing of a person by police), the defendants filed a Rule 68 offer which the plaintiffs did not accept. The defendants' offer of $100,000 (a sum greater than that ultimately recovered after trial) was to include "costs now accrued and attorney's fees." Following trial, plaintiffs sought attorney's fees under 42 U.S.C. § 1988. Defendants urged that only pre-offer attorney's fees were recoverable since Rule 68 requires an offeree to assume costs post-offer if the rejected offer ultimately proves to be greater than the amount recovered at trial. Plaintiff argued that the offer was invalid because it lumped together damages and costs and, consequently, could not be used as a basis for abating costs after the offer was made. The Supreme Court rejected plaintiff's argument and, in addition, concluded that the term "costs" in Rule 68 refers to all costs properly awarded in a civil rights case, which include attorney's fees. *Id.* 473 U.S. at 9, 105 S.Ct. at 3016.

■ If the offer of judgment in this case simply had stated that it was to include costs, its acceptance would have prohibited an additional claim for attorney's fees. Conversely, "if the offer does not state that costs are included and an amount for costs is not specified, the court will be obliged by the terms of [Rule 68] to include in its judgment an additional amount which in its discretion it determines to be sufficient to cover the costs." *Id.* at 6 (citation omitted). It follows that the plaintiff, as prevailing party, is entitled to obtain his costs, including attorney's fees.

Defendant argues that this court must determine what its intentions were in making the offer and what the plaintiff's assumptions were in accepting it. To subject Rule 68 offers to such collateral proceedings would undermine entirely the purpose of the rule. Defendant relies heavily on *Radecki v. Amoco Oil Co.*, 858 F.2d 397 (8th Cir.1988). The case is clearly distinguishable on its facts, involving as it did two offers of judgment, the second of which was intended to clarify the first. Moreover, the statute involved in that case did not make attorney's fees a part of the costs. Further, the court did not even resolve the question of whether an offer of judgment could be revoked, the remedy defendant seeks here.

The simple and obvious fact of the matter is that the defendant's counsel never anticipated that the plaintiff would accept the offer of judgment and, indeed, that offer would not have been accepted had it included attorney's fees. Defendant's counsel simply erred in failing to protect against an acceptance of the offer followed by a request for costs, including attorney's fees. Defendant's motion, therefore, is denied.

■ We turn now to plaintiff's application for costs, including attorney's fees, of approximately seven times the amount of the accepted judgment. With respect to the rates claimed, the plaintiff's counsel of record, Donald L. Sapir, has billed his time at $175 an hour. We deem that sum to be appropriate for Mr. Sapir, who is an acknowledged and experienced expert in this field. Most of the billed time, however, is for that of his junior associates, for whom a rate of $125 an hour is sought. These associates were only a year or two out of law school at the time they performed their services. Although such an hourly charge might be appropriate for similarly experienced associates in the large New York law firms (who are paid as much as federal judges), we are well aware that compensation for young lawyers here in Westchester County is far less. Although we have not been advised of their salaries when they were associated with Mr. Sapir's firm, we suspect that a charge of $75 an hour might

be more appropriate.[4] In addition, the hours charged seem substantially excessive. Of course, they include some time spent prior to the institution of this suit when a state proceeding challenging the ruling of the State Division of Human Rights was contemplated, as well as some of the time that has been involved in this attempt to recover the comparably very large attorney's fee.[5] Finally, a small upward adjustment of the fee is sought to the extent that its recovery was partially contingent. We conclude that, even without reference either to the manner of obtaining the judgment or to its size, the fee sought is clearly excessive.[6]

With respect to the manner in which the judgment was obtained, i.e., by acceptance of an offer of judgment that was imprudently made, we do not believe that should be a reason for reducing the fee award. However, the amount obtained by this method of recovery, an insignificant $5000, is a very pertinent factor to consider. Admittedly, for some civil rights actions the relief obtained is relatively inconsequential. See Carey v. Piphus, 435 U.S. 247, 266–67, 98 S.Ct. 1042, 1053–54, 55 L.Ed.2d 252 (1978) (holding that, even in absence of actual damages, an award of $1 in nominal damages would be appropriate as a means of vindicating one's "absolute" right to procedural due process).[7] Many of these actions, however, particularly those brought on behalf of a class, achieve important constitutional goals, and the efforts of counsel in realizing them should be rewarded. See

McCann v. Coughlin, 698 F.2d 112, 128 (2d Cir.1983) (noting award of attorney's fees "particularly important in cases alleging due process violations, because of the difficulty of proving and recovering actual damages"). Cases of that nature, however, are far removed from the situation at bar which involves a straightforward claim of individual employment discrimination with identifiable money damages flowing therefrom. It is, in reality, simply an action to recover money damages involving no great or unresolved constitutional principles.

Moreover, it has been said, with only a slight bit of exaggeration, that the employment discrimination laws now cover all but white, Anglo–Saxon males in their 20's and 30's who are in good health, and have only the most conventional of sexual interests and religious preferences.[8] See, e.g., School Board of Nassau County v. Arline, 480 U.S. 273, 280–86, 107 S.Ct. 1123, 1127–30, 94 L.Ed.2d 307 (1987) (those with contagious diseases protected from discrimination in employment by Federal Rehabilitation Act); Dothard v. Rawlinson, 433 U.S. 321, 328–31, 97 S.Ct. 2720, 2726–27, 53 L.Ed.2d 786 (1977) (height and weight requirements for corrections positions can be discriminatory); Blackwell v. U.S. Dep't of the Treasury, 639 F.Supp. 289, 290 (D.D.C. 1986) (transvestites protected by Federal Rehabilitation Act). Since virtually everyone is protected by legislation, therefore, anyone whose employment is terminated and even those who resign because they do

---

4. A law student's time is billed at $50 an hour. There are certain problems concerning the unauthorized practice of law involved in such billings, but even if she is treated as a paralegal we have no information concerning what salary, if any, she was paid.

5. The hours claimed are, at points, inadequately identified, and there are a number of references to legal research the need for and subject of which is not established.

6. The plaintiff himself has paid counsel only $6100 for legal services to date. We believe the appropriate lodestar, based upon the modified rates without upward adjustment, to be no more than $20,000.

7. But see Orozco v. Sobol, 703 F.Supp. 1113, 1117 (S.D.N.Y.1989) (suggesting that when mere prospect of nominal damages prevents dismissal

of case as moot, even though case touches on matters of uniquely local concern yet no longer directly implicates constitutional concerns, then law has indeed assumed something of an Alice in Wonderland-like quality; in such a case, the concern alive in Carey v. Piphus—the need to award nominal damages to vindicate constitutional principles—no longer exists).

8. Even this rare individual can sue under either section 1981 or section 704(a) of Title VII, 42 U.S.C. § 2000e–3(a), claiming that he was fired because he opposed discriminatory employment practices directed against other employees. DeMatteis v. Eastman Kodak Co., 511 F.2d 306, 312 (2d Cir.1975) (relying on Sullivan v. Little Hunting Park, Inc., 396 U.S. 229, 237, 90 S.Ct. 400, 404, 24 L.Ed.2d 386 (1969)).

not like the job are free to assert their claims in federal "civil rights" litigation. Such suits have little in common with the great civil rights cases which rendered such profound changes in our society in the last twenty or thirty years. This action, and others like it, seek to recover money and not to vindicate constitutional rights *per se* and, consequently, the amount recovered should be an important guide to the reasonableness of the attorney's fees award. *See especially supra* (discussing tactical underpinnings of a section 1981 add-on in a Title VII case).[9]

Indeed, beyond cases like *Carey* and *McCann,* cited *supra,* which involve procedural claims with amorphous damage assertions, the result obtained *is* a consideration in civil rights litigation where actual damages are more readily quantifiable. *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 1939-40, 76 L.Ed.2d 40 (1983). In such cases, if "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended . . . times a reasonable hourly rate may be an excessive amount." *Id.* 461 U.S. at 436, 103 S.Ct. at 1941. *Accord Hillburn v. Commissioner, Conn. Dep't of Income Maintenance,* 683 F.Supp. 23, 26 (D.Conn. 1987) (noting "mandate of *Hensley* is also that 'where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained'") (quoting *Hensley,* 461 U.S. at 440, 103 S.Ct. at 1943).

■ Further, when what is essentially a private action for damages masquerades under the banner of vindicating important civil rights, when in reality there is little community or societal benefit to be derived from the action, we think it to be well within the court's discretion—if not its obligation—to consider that fact in assessing attorney's fees. *See, e.g., Hughes v. Repko,* 578 F.2d 483, 490-91 (3d Cir.1978) (Rosenn, J., concurring) (stating court may adjust fee downward if amount recovered is

small and societal benefits produced by the litigation are minimal); *Swicker v. William Armstrong & Son, Inc.,* 484 F.Supp. 762, 769 (E.D.Pa.1980) (noting downward adjustment in fee may be justified "where the verdict affects only an individual plaintiff complaining of an isolated act of individual discrimination").

Plaintiff relies heavily on the Supreme Court's decision in *City of Riverside v. Rivera,* 477 U.S. 561, 574, 106 S.Ct. 2686, 2694, 91 L.Ed.2d 466 (1986) where the Court held:

> [W]e reject the notion that a civil rights action for damages constitutes nothing more than a private tort suit benefitting only the individual plaintiffs whose rights were violated. Unlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms.

Consequently, the Court concluded that fee awards "are not conditioned upon and need not be proportionate to an award of money damages." *Id.* 477 U.S. at 576, 106 S.Ct. at 2695.

*Rivera,* however, is a true civil rights action under 42 U.S.C. § 1983 involving the deprivation of constitutional rights (in that case, a warrantless intrusion by police accompanied by the excessive use of force). Legally and factually it is far removed from the instant employment-discharge case involving primarily statutory rights and an isolated act of alleged discrimination. On those bases alone we think *Rivera* to be of somewhat limited authority in the present context.

Further, *Rivera* was a 4-1-4 decision. The concurring opinion of Justice Powell, which creates the majority, constitutes the controlling law. He notes, at page 585, that "[w]here recovery of private damages is the purpose of a civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount

---

9. We recognize, of course, that Title VII is part of this country's patchwork of "civil rights" law. The distinction we draw in this opinion between Title VII and what we broadly have referenced otherwise as civil rights litigation or law is that between statutory claims (Title VII) and constitutional claims (posited under section 1981 or 1983).

of damages awarded as compared to the amount sought." He further observed that "[i]t probably will be the rare case in which an award of *private damages* can be said to benefit the public interest to an extent that would justify the disproportionality between damages and fees reflected in this case." *Id.* 477 U.S. at 586 n. 3, 106 S.Ct. at 2700 n. 3 (emphasis in original). He found, however, that there was an important public interest served by that litigation and concluded:

> In sum, despite serious doubts as to the fairness of the fees awarded in this case, I cannot conclude that the detailed findings made by the District Court, and accepted by the Court of Appeals, were clearly erroneous, or that the District Court abused its discretion in making this fee award.

*Id.* 477 U.S. at 586, 106 S.Ct. at 2700.

Under all these circumstances, and in our discretion, we determine that the appropriate attorney's fee for plaintiff in this action is $7500, plus the costs of $1174.98. The Clerk will enter judgment accordingly.

SO ORDERED.