

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-4-2003

# Le v. Univ PA

Precedential or Non-Precedential: Precedential

Docket 01-3638

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Le v. Univ PA" (2003). *2003 Decisions.* Paper 701.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/701

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed March 4, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 01-3638, 01-3759

TAI VAN LE, MR.

v.

UNIVERSITY OF PENNSYLVANIA,
A Not-for-profit corporation and;
STANLEY OPELLA, an individual

(E. D. Civil No. 00-cv-00481)

TAI VAN LE, MR.

v.

UNIVERSITY OF PENNSYLVANIA,
A Not-for-profit corporation

(E. D. Civil No. 99-cv-1708)

Tai Van Le, Appellant No. 01-3638

TAI VAN LE, MR.

v.

UNIVERSITY OF PENNSYLVANIA,
A Not-for-profit corporation and;
STANLEY OPELLA, an individual

(E. D. Civil No. 00-cv-00481)


TAI VAN LE, MR.

v.

UNIVERSITY OF PENNSYLVANIA,
A Not-for-profit corporation

(E. D. Civil No. 99-cv-1708)

The Trustees of the University of
Pennsylvania, the proper
corporate name of the University
of Pennsylvania,
Appellant No. 01-3759

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

(D.C. Civil Nos. 99-cv-01708 and 00-cv-00481)
District Judge: The Honorable Bruce W. Kauffman

Argued October 29, 2002

BEFORE: NYGAARD, COWEN, and
MICHEL,* Circuit Judges.

(Filed March 4, 2003)

        Robert F. O'Brien, Esq. (Argued)
        Nancy S. Sokol, Esq. (Argued)
        Tomar, O'Brien, Kaplan, Jacoby,
         & Graziano
        20 South Brace Road
        Cherry Hill, NJ 08034
         Counsel for Appellant/
        Cross Appellee

_____

* The Honorable Paul R. Michel, Circuit Judge for the United States
Court of Appeals for the Federal Circuit, sitting by designation.

2

        Neil J. Hamburg, Esq. (Argued)
        JuHwon Lee, Esq.
        Hamburg & Golden
        1601 Market Street
        Suite 565
        Philadelphia, PA 19103
         Counsel for Appellee/
        Cross Appellant

OPINION OF THE COURT

NYGAARD, Circuit Judge:

In this appeal, Appellant and Cross-Appellee Tai Van Le
alleges that the District Court erred on two points by
denying his Motion for Reconsideration: (1) denying the
Motion to Amend Judgment to Increase Back Pay and
Include Front Pay, and (2) upholding the validity of the Rule
68 Offer of Judgement. On cross-appeal, Appellees and
Cross-Appellants, The Trustees of the University of
Pennsylvania, allege that the District Court erred by
denying in part its Petition for Attorneys' Fees and Costs
and denying its Motion for Judgment Notwithstanding the
Verdict on Punitive Damages. For the reasons discussed
below, we will affirm the decision of the District Court.

I. Jurisdiction and Standard of Review

We have jurisdiction over a final order of the District
Court pursuant to 28 U.S.C. S 1291. The decision to deny
a Motion for Reconsideration is within the discretion of the
District Court, but "if the court's denial was based upon the

interpretation and application of a legal precept, review is
plenary." Koshatka v. Philadelphia Newspapers, Inc., 762
F.2d 329, 333 (3d Cir. 1985). On cross-appeal, we also
have plenary review over the decision to deny the Motion for
Judgment as a Matter of Law. Ambrose v. Township of
Robinson, 303 F.3d 488, 492 (3d Cir. 2002). However,
because the jury determined the issue on both of these
motions, "our scope of review is limited to examining
whether there is sufficient evidence to support the verdict,

3

drawing all reasonable inferences in favor of the verdict
winner." Kelly v. Matlock, Inc., 903 F.2d 978, 981 (3d Cir.
1990). We have plenary review over both legal questions
regarding the interpretation of Rule 68 and the
construction of the offer of judgment. Public Interest
Research Group v. Windall, 51 F.3d 1179, 1184 (3d Cir.
1994).

## II. Discussion

The University of Pennsylvania hired Tai Van Le, a
Vietnamese-born U.S. citizen, as an Electronics Technician
in 1986. Le worked primarily on projects generated by the
research group led by Dr. Stanley Opella and related to the
design of sophisticated electronic devices for nuclear
magnetic resonance spectroscopy. This working
arrangement continued harmoniously until late 1997, when
Dr. Opella began expressing concern with the accuracy of
Le's designs and Le began to feel that certain statements
made in the laboratory were directed towards his national
origin in a discriminatory manner. After reporting these
comments to the University, Le was assigned a new
supervisor and the University conducted an internal
investigation that did not discover discrimination.

The situation did not improve from the perspective of
either party and from September to early December 1998,
Le took an extended sick leave. Upon his return, the
University placed Le on probation for poor performance
prior to his leave. Le was given several specific tasks to
complete during the one month probationary period. He did
not complete the assigned tasks and was terminated for
poor performance in January 1999.

In April 1999, Le filed a pro se complaint alleging
national origin discrimination against his employer, the
University of Pennsylvania, and his supervisor, Dr. Stanley
Opella. Le filed a second complaint in January 2000
against the same parties, this time alleging retaliation. On
February 29, 2000, the defendants made an offer of
judgment for $50,000 pursuant to FED. R. CIV. P. 68.1 This

---

1. Federal Rule of Civil Procedure 68 provides, in part:

4

offer was made jointly by the defendants on both of the then pending cases. Le rejected the offer and, after consolidation, the cases went to trial.

At the close of Le's evidence, the claims against Dr. Opella were dismissed pursuant to FED. R. CIV. P. 50. The remaining defendant, the University of Pennsylvania, presented its case and after deliberations, the jury returned a mixed verdict. The jury found for the University on Le's discrimination claim, but awarded Le $25,000 in compensatory damages and $10,000 in punitive damages as to the retaliation claim. In post-trial motions, the District Court denied Le's post-offer attorneys' fees under Rule 68 and granted the University's motion to shift its post-offer costs. However, the District Court denied the University's request for post-offer attorneys' fees, finding that such fees could only be awarded under Title VII when the plaintiff brought a frivolous claim. The District Court also denied motions from both parties attacking the sufficiency of the evidence for the jury's verdict.

A. Le's Appeal

Le alleges that the District Court erred by denying his Motion for Reconsideration. Specifically, Le argues that the University did not demonstrate that he failed to mitigate his damages and thus the jury award was incorrect. Le also claims that the Offer of Judgment made by the University is invalid. Both arguments fail.

1. Mitigation of Damages by Le

Damages in a Title VII case may be reduced by the jury, provided that the defendant-employer makes certain showings.2 In Booker v. Taylor Milk Co., 64 F.3d 860, 864

_____

At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued. . . . If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer.

2. Title VII has been interpreted to require mitigation by the employee and allows reduction of damages otherwise. 42 U.S.C.S 2000e-5(g)(1)

5

(3d Cir. 1995), we explained that "[t]o meet its burden, an employer must demonstrate that 1) substantially equivalent work was available, and 2) the Title VII claimant did not exercise reasonable diligence to obtain the employment." From the evidence presented at trial, it is clear that this burden was met.

The University introduced testimony that University

employees who are laid off regularly obtain comparable jobs at the University. This was exemplified by the testimony of Dr. Kathy Vallentine, Le's co-worker in the same laboratory. Dr. Vallentine testified that with a diligent search she was able to find comparable employment within the University after the laboratory closed. Additionally, Dr. Hai Lung Dai, the Chair of the Chemistry Department, testified that the University offered Le an opportunity to have a paid leave of absence. During this leave, Le would receive support from the University's Human Resources Division and a job consultant to aid him in his job search for a position within the University for three months and outside the University for six months. Le declined this offer.

As to Le's duty to seek other employment, he testified that he attended a job fair at some point and posted his resume online, but could only produce two rejection letters from a time period some fifteen months after his dismissal as proof that he sought other employment. Le did not attempt to find other work for a significant period of time following his dismissal, and only half-heartedly began after the amended lawsuit was filed in 2000. The jury could infer, from the ability to transfer positions within the University, the job fairs related to engineering, the two possible jobs from which Le was rejected, coupled with Le's refusal to seek job-hunting assistance and general insouciance about his job search, that other jobs existed but that Le did not exercise reasonable diligence.

2. The Rule 68 Offer of Judgment

Le argues that the Offer of Judgment made by the University should be declared invalid because it was not

_____

("Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.").

6

originally apportioned between Dr. Opella and the University, nor between the discrimination and retaliation claims. Le also argues that the offer contains ambiguous language and thus cannot be compared to the final judgment.

Le points to several cases outside our circuit where the failure to apportion the offer was deemed fatal. In Gavoni v. Dobbs House, Inc., 164 F.3d 1071 (7th Cir. 1999), the Seventh Circuit affirmed the denial of the defendant's motion for costs under Rule 68. The defendant had made an unapportioned offer of $10,000 to three plaintiffs and the jury ultimately awarded the plaintiffs a total of $6,500. Although the total amount of the offer was greater than the total sum received by the three plaintiffs, the court was concerned that the plaintiffs lacked "a clear baseline from which [they] may evaluate the merits of their case relative to the value of the offer." Id. at 1076. The court noted that

there was no easily comparable sum involved from the face of the offer and pointed to the variety of arguments made by both sides, ranging from comparing the total offer with the total award, splitting the offer in thirds and then comparing, or comparing the individual awards with the total offer. According to the court "[t]hese varied constructions of the single offer only underscore its fatal problem: imprecision. The plaintiffs simply could not have evaluated the individualized values of the offer." Id.

Le also cites to the Fifth Circuit's decision in Johnston v. Penrod Drilling Co., 803 F.2d 867 (5th Cir. 1986). In Johnston, the court reversed the lower court's decision to grant costs pursuant to Rule 68. Id. at 869. The court acknowledged the unique factual position of the case, in that a single plaintiff had received an unapportioned offer from two defendants, rejected the offer, but then later settled with one of the defendants. At the close of trial, the jury decided against the remaining defendant, but awarded the plaintiff an amount less than the original Rule 68 offer. The court found that the proper comparison was to look at the individual settlement amount plus the jury award as compared to the Rule 68 offer. Id. at 870. As this amount was greater than the offer, the court reversed.

7

The cases Le cites are inapplicable because they differ significantly from the factual position of this case. Here, the University and Dr. Opella did not make an offer to multiple plaintiffs, nor were there other amounts besides the jury verdict to compare. Le knew from the outset what amount would be compared with his future judgment. In considering and distinguishing the cases cited by Le, the District Court also noted the unique relationship between Dr. Opella and the University. The University's indemnity contract provides that they had accepted any financial responsibility resulting from any actions by Dr. Opella and thus "the University's pocketbook and Dr. Opella's pocketbook were one and the same." Le v. University of Pennsylvania, 2001 WL 849707, at * 5 (E.D. Pa. July 13, 2001). The District Court found that dismissing Le's claims against Dr. Opella was not fatal to the offer of judgment because Le could expect that all costs would be borne by the University. Id.

Given the single identity of the defendants, failure to apportion between the University and Dr. Opella was not fatal to the offer. A decision to the contrary could promote the addition of improper defendants so that their eventual dismissal would negate any legitimate Rule 68 offer made by the proper defendants.3 Likewise, the need to apportion between the retaliation and discrimination claims is unnecessary where, as here, only one plaintiff receives an offer pertaining to both claims. The jury returned a verdict for Le on the retaliation claim, but not on the discrimination claim. The offer applied to both claims in toto and the total judgment of $35,000 awarded can easily be compared to the Rule 68 Offer of $50,000 plus costs.

3. We note that the District Court found that Dr. Opella was Le's supervisor and not his employer. Under this relationship, liability cannot exist pursuant to Title VII. Sheridan v. EI DuPont de Nemours & Co., 100 F.3d 1061, 1078 (3d Cir. 1996) (en banc). In Sheridan, we sat en banc to "clarify the quantum and nature of evidence that will permit a jury to find that an employer engaged in impermissible employment discrimination." Id. at 1063. As part of the appeal, we affirmed the dismissal of Sheridan's supervisor at DuPont because"Congress did not intend to hold individual employees liable under Title VII." Id. at 1078.

8

Le's second argument for invalidating the offer of judgment is that the language of the offer was ambiguous as to whether or not costs were included--such that the offer was for either $50,000 including costs or $50,000 plus costs. The plain language of the offer dictates the result. The offer provides "for the total amount of $50,000.00, plus costs then accrued." App. at p. 84a. In Marek v. Chesny, 473 U.S. 1 (1985), the Supreme Court held that an offer in a Title VII matter includes attorneys' fees in the definition of costs. The Court further found that "[a]s long as the offer does not implicitly or explicitly provide that the judgment not include costs" an offer is valid and presumes the defendant will pay costs. Id. at 6. Le counters by quoting later language in the offer that "the offer [of $50,000 plus costs] shall represent and fix the total liability of the [defendants] for any and all of plaintiff 's loss, claims, damages, costs, attorneys' fees, or any other amounts or expenses recoverable, or potentially recoverable, in this action." App. at p. 85a. Le claims that this language deviates from the clear language of "plus costs accrued" and creates an assumption that something else is meant. This argument has no merit. The plain language of the offer states that it is "plus costs" and in another portion of the offer, the University specifically cites to the Marek decision to state that such costs would include attorneys' fees. The District Court properly compared the final judgment of $35,000 plus costs to the offer of $50,000 plus costs in determining that the offer exceeded the judgment.

B. The University's Cross-Appeal

On cross-appeal, the University argues that the District Court erred by denying its Motion for Judgment as Matter of Law on the issue of punitive damages, and by denying its request for post-offer attorneys' fees under FED . R. CIV. P. 68.

1. Motion for Judgment as a Matter of Law

Initially, the University argues that they are entitled to judgment as a matter of law on punitive damages because the record is devoid of evidence that the University acted maliciously or with reckless indifference towards Le's federally protected rights.4 The record indicates that there

4. As provided in 42 U.S.C. S 1981a(b)(1),"[a] complaining party may recover punitive damages . . . if the complaining party demonstrates that

9

was sufficient evidence to support the jury's verdict on punitive damages. For example, Dr. George Palladino, the Vice Chair of the Chemistry department, reassigned Dr. Ronald McNamara as Le's new supervisor following Le's complaints regarding discrimination and Dr. Opella. When questioned as to why Dr. McNamara was assigned, Dr. Palladino testified that he based this decision on his interactions with Dr. McNamara on the basketball court. Specifically, he testified that:

> We had departmental basketball, started playing that when I was, first came to Penn and McNamara was a regular and we had African-Americans. We had Asian-Americans that were out there every day and I've been around people a lot in my life and you can tell if somebody is a racist I think. You'd see it pretty easily on a basketball court. And Ron is a real, he's an excellent athlete and he played very well and he, it didn't make any difference what your color or creed was, it never--I mean, you make a judgment I think in those situations.

Since the team was made up of a racially diverse group, Dr. Palladino concluded that Dr. McNamara would not have any problems supervising Le. The decisionmaking process used by Dr. Palladino could easily have been viewed by the jury as demonstrating 'reckless indifference' towards Le's federally protected rights. Also, there was additional evidence that Le presented a lengthy rebuttal in response to a bad performance review, which was then cursorily handled by the University's administration. Further, the District Court noted that upon receiving Le's complaint, and before concluding its investigation, the administration failed to counsel and advise Le's supervisors and colleagues about the evils of discrimination. In all, sufficient evidence exists to support the jury's verdict.

2. The Rule 68 Offer of Judgment

The final issue on the University's cross-appeal is whether the District Court erred by holding that the

_____

the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual."

10

definition of costs, as it pertains to defendants under Rule 68, does not include attorneys' fees.

The seminal case in this area is Marek v. Chesny , 473 U.S. 1 (1985). Although it does not squarely answer the question before us, it does guide our analysis. In Marek, the Supreme Court addressed "whether attorneys' fees incurred by a plaintiff subsequent to an offer of settlement under Federal Rule of Civil Procedure 68 must be paid by the defendant under 42 U.S.C. S 1988, when the plaintiff recovers a judgment less than the offer." Id . at 3. Generally, prevailing plaintiffs in a civil rights suit are entitled to recover their attorneys' fees, but Rule 68 operates to block such a shift if the judgment returned is less than the offer. In discussing the policies of both S 1988 and Rule 68, the Court found that the two were not in conflict and that "the most reasonable inference is that the term 'costs' in Rule 68 was intended to refer to all costs properly awardable under the relevant substantive statute or other authority. In other words, all costs properly awardable in an action are to be considered within the scope of Rule 68'costs.' " Id. at 9. The Court went on to hold that "absent congressional expression to the contrary, where the underlying statute defines 'costs' to include attorneys' fees, we are satisfied such fees are to be included as costs for purposes of Rule 68." Id. The Court found that this interpretation of Rule 68 did not undercut the goals of civil rights plaintiffs, and that the plaintiff in Marek was not entitled to attorneys' fees due to the operation of Rule 68.

According to Marek, we must look to the underlying statute and its interpretations to determine what constitutes a 'properly awardable' cost to a defendant in a Title VII action. The University urges that becauseS 1988 grants a prevailing party reasonable attorneys' fees, and they prevailed on the discrimination claim and the issue of post-offer costs, they should receive their post-offer attorneys' fees. This argument fails to account for how we have defined 'costs' under S 1988. In EEOC v. L.B. Foster Co., 123 F.3d 746 (3d Cir. 1997), we addressed the issue of when a Title VII defendant may be properly awarded its attorneys' fees as the prevailing party. Tracking the Supreme Court's holding in Christiansburg Garment Co. v.

11

EEOC, 434 U.S. 412 (1978), we concluded that the standard for awarding attorneys' fees to a prevailing defendant was not the same as the standard for a prevailing plaintiff. L.B. Foster Co., 123 F.3d at 750. We held that "a district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff 's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." Id. at 751 (quoting Christiansburg, 434 U.S. at 421).

In the context of Rule 68, however, this creates a tension because Rule 68 does not apply if the defendant wins the underlying lawsuit. Delta Air Lines, Inc. v. August, 450 U.S. 346, 352 (1981). Thus, for the cost-shifting provision of Rule 68 to apply, the plaintiff must obtain some judgment

against the defendant. Such a recovery by the plaintiff would negate any argument that the plaintiff's suit was frivolous. Therefore, we hold that a defendant in a Title VII civil rights suit can never recover its attorneys' fees under Rule 68, because the triggering event of that rule alters the potential costs that are 'properly awardable' to a defendant under S 1988.5 Here, Le was awarded $35,000 in damages and thus his suit cannot be described as frivolous. We conclude that the University's attorneys' fees are not properly awardable costs under Rule 68.

_____

5. Although this is an issue of first impression for our court, this conclusion comports with those of our sister courts of appeal who have previously addressed this issue. See, e.g., Crossman v. Marcoccio, 806 F.2d 329, 334 (1st Cir. 1986) ("because courts may not properly award attorney's fees to unsuccessful civil rights defendants under section 1988, we hold that Rule 68 can never require prevailing civil rights plaintiffs to pay defendants' post-offer attorney's fees."); O'Brien v. City of Greers Ferry, 873 F.2d 1115, 1120 (8th Cir. 1989) (accepting the holding of Crossman and finding that the City was not entitled to attorneys' fees because the plaintiff had recovered against two municipal officers); EEOC. v. Bailey Ford, Inc., 26 F.3d 570, 571 (5th Cir. 1994) ("[E]ven if appellee were entitled to recover "costs" under Rule 68, its attorneys' fees are not among the properly recoverable costs without a determination that the action was frivolous, unreasonable, or without foundation.").

III. Conclusion

For the forgoing reasons, the August 29, 2001 Order of the District Court will be affirmed.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit