John DOE, a Minor, (born 01/28/90) by his Next Friend, Jane Doe, and Jane, Doe, Individually, Plaintiffs,

v.

David KEALA, Defendant.

No. CIV.00–00044 ACK/KSC.

United States District Court, D. Hawai'i.

Feb. 11, 2005.

See also 351 F.Supp.2d 1021.

---

Stanley E. Levin, Davis Levin Livingston Grande, Edie A. Feldman, Law Office of Edie A. Feldman, Honolulu, HI, for Plaintiffs.

Russell A. Suzuki, Cindy S. Inouye, Office of the Attorney General—Hawaii, Heidi M. Rian, Laurence K. Lau, Office of the Attorney General—State of Hawaii, Awilda R. Marquez, Attorney General of Hawaii, Dept of the Attorney General, State of HI, John Cregor, Jr., Office of the Attorney General—Hawaii, Nelson Y. Nabeta, Gary Hynds, Department of the Attorney, General–State of Hawaii, Employment Law Division, Kathleen N.A. Watanabe, James Earl Halvorson, Department of the Attorney, General–State of Hawaii, Department of Education, Honolulu, HI, Defendants.

## ORDER ADOPTING IN PART AND MODIFYING IN PART REPORT OF THE SPECIAL MASTER ON PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS, DEFENDANT DAVID KEALA'S BILL OF COSTS AND PLAINTIFFS' MOTION TO STRIKE DEFENDANT DAVID KEALA'S NOTICE OF BILL OF COSTS

KAY, District Judge.

### BACKGROUND AND PROCEDURAL HISTORY [1]

On January 14, 2000, Plaintiffs John ("John") and Jane Doe ("Jane") filed a complaint against the State of Hawaii Department of Education ("State D.O.E."), A–Plus Program, Herman Aizawa ("Aizawa"), Ralph Murakami ("Murakami"), Maude Yamakawa ("Yamakawa"), Sonia Zane ("Zane"), and David Keala ("Keala") (collectively "Defendants"),[2] based on two

[1]. The facts of this case are discussed extensively in the Court's Orders (1) Granting in Part and Denying in Part Defendant Keala's Motion for Judgment on the Pleadings and for Summary Judgment, filed 11/29/01 (2) Dismissing Plaintiff's Counter–Motion for Summary Judgment, Granting in Part and Denying in Part State Defendant's Motion to Strike, Granting in Part and Denying in Part State Defendants' Motion for Judgment on the Pleadings and Summary Judgment; and Denying Plaintiffs' Motion for Summary Judgment, filed 2/23/04.

[2]. Aizawa, Murakami, Yamakawa, Zane, and Keala were sued in both their official and individual capacities. See Compl. ¶ 7–11. The State D.O.E., A–Plus and Aizawa, Murakami, Yamakawa, Zane and Keala in their

incidents that occurred at Pukalani Elementary School while John Doe was a second grade student: (1) the alleged assault on John Doe by Zane (an employee of the A–PLUS Program at Pukalani School) on or about February 4, 1998 and (2) the alleged taping of John Doe's head to a tree by Keala (a vice-principal of Pukalani School at the time) on or about February 19, 1998. In their Complaint filed January 14, 2000, Plaintiffs asserted the following claims in the Complaint: Count 1 (Violation of 42 U.S.C. § 1983 ("Section 1983") and 42 U.S.C. § 1981), Count 2 (Negligence and Gross Negligence), Count 3 (False Imprisonment), Count 4 (Assault and Battery), Count 5 (Negligent Infliction of Emotional Distress), Count 6 (Violation of Title IX), Count 7 (Violation of Hawaii Revised Statutes ("HRS") § 302A–1001 ("302A–1001 Claim")), Count 8 (Loss of Consortium), and Count 9 ("Punitive Damages").[3]

On November 29, 2001, this Court issued an Order Granting in Part and Denying in Part Defendant Keala's Motion for Judgment on the Pleadings and for Summary Judgment ("November 29, 2001 Order"), finding in part that Defendant Keala was not entitled to the defense of qualified immunity and could be held civilly liable for damages brought pursuant to Section 1983.[4] The November 29, 2001 Order also dismissed Plaintiffs' Section 1983 claims against Defendant Keala in his official capacity. *See* November 29, 2001 Order at

11–12, n. 7. Subsequently, Keala appealed the qualified immunity issue to the Ninth Circuit and on January 15, 2002, the Court granted Keala's Motion to Stay Pending Appeal.

Plaintiffs filed a First Amended Complaint on February 6, 2002 setting forth an additional claim for violation of the Rehabilitation Act ("Section 504"). Plaintiffs alleged that the State did not follow regulations implementing Section 504 before imposing discipline on John. *See* First Am. Compl. ¶ 41–49. Plaintiffs also asserted claims for (2) Violation of Section 1983, (3) Negligence and Gross Negligence, (4) False Imprisonment, (5) Assault and Battery, (6) Negligent Infliction of Emotional Distress, (7) Violation of HRS § 302A–1001, (8) Loss of Consortium, and (9) Punitive Damages.

On June 12, 2002, the deadline to file dispositive motions, Zane filed a Motion for Judgment on the Pleadings ("Zane's MJP"), the State Defendants a filed a Motion for Judgment on the Pleadings and for Summary Judgment ("State's MJP/MSJ"), and Plaintiffs filed a Motion for Partial Summary Judgment ("Plaintiff's MPSJ"). On June 24, 2002, Plaintiffs filed an Amended and Supplemental Memorandum of Law in Support of Motion for Partial Summary Judgment Filed June 12, 2002 ("Supplemental Memo"). On July 1, 2002, the State Defendants filed a Motion to Strike the Supplemental Memo. Following a number of disputes with respect to

---

official capacities are referred to as the "State Defendants."

3. The numbering of the causes of action in the Complaint is not in sequence and duplicative in some instances. The Court lists the counts in the order that they are plead in the Complaint.

4. The Court denied Defendant Keala's motion with respect to Plaintiffs' Section 1983 claim based on violation of the Fourteenth and

Fourth Amendments to the United States Constitution as well as Plaintiffs' Loss of Consortium and Negligent Infliction of Emotional Distress Claims. The Court granted Defendant Keala's motion with respect to Plaintiffs' claims based on violation of Title IX, Section 1981, and Section 1983 insofar as they were based on violations of the rights secured by the Hawaii Constitution and the Fifth and Ninth Amendments to the United States Constitution. *See* November 29, 2001 Order.

these motions and other issues, the parties stipulated in mid-July 2002, to stay the above motions until the Ninth Circuit issued a decision on Keala's interlocutory appeal on the qualified immunity issue.

On June 20, 2003, the Ninth Circuit affirmed the Court's November 29, 2001 decision. *See Doe v. State*, 334 F.3d 906 (9th Cir.2003). The parties reinstated their motions in October and November of 2003. In her MJP, Zane argued, among other things, that she was entitled to judgment on the pleadings on all of the state law claims except Count 5 (Assault and Battery) and on Count 2 (Section 1983) because she was entitled to qualified immunity. The State's MJP/MSJ raised numerous arguments, including without limitation: (1) State agencies and the administrators as officials were not liable for federal civil rights violations under § 1983, (2) the Administrators (Aizawa, Murakami and Yamakawa) are not individually liable for alleged violations of federal laws under § 1983, (3) the State Defendants are not liable for violations of Section 504, (4) the State Defendants are not liable for alleged violations of state laws, (5) the Administrators are not individually liable for alleged violations of state laws, (6) punitive damages are inappropriate. Plaintiffs' MPSJ requested partial summary judgment on issues of liability under Section 504 on grounds that (1) the State and A–Plus are liable under respondeat superior; (2) Keala, acted with deliberate indifference; (3) John was denied a free appropriate education; and (4) A–Plus violated Section 504. On December 18, 2003, Plaintiffs filed a "Counter-Motion for Summary Judgment" with their opposition to Defendant's MJP/MSJ ("Plaintiff's Counter–MSJ") requesting that the Court grant summary judgment on the waiver of the Eleventh Amendment defense by Keala in his official capacity. After a few scheduling changes, the above motions (as well as the State's Motion to Strike) were set for hearing on February 2, 2004.

On December 24, 2003, Defendants served upon Plaintiffs a Rule 68 Offer of Judgment pursuant to Fed.R.Civ.P. 68. *See* Exhibit B to Defendant Keala's Memorandum in Opposition to Plaintiffs' Motion for an Award of Attorneys' Fees and Costs ("Offer of Judgment"). The Offer of Judgment stated, in pertinent part:

> Defendants State of Hawai'i Department of Education, A–Plus Program at Pukalani Elementary School, Defendants Maude Yamakawa, Herman Aizawa, Ralph Murakami, David Keala and Sonia Zane in the official capacities, and Defendants David Keala, Maude Yamakawa, Herman Aizawa and Ralph Murakami in their individual capacities, by and through their attorneys of record, pursuant to Fed.R.Civ.P. 68, hereby offer to allow judgment to be taken against the Defendants in their official capacities in the amount of Ninety Thousand Two Hundred Fifty ($90,250.00), inclusive of all allowable attorneys fees and costs accrued to date, which sum is to be paid by the State of Hawai'i.

> This Offer of Judgment is conditioned upon the Plaintiffs' dismissal with prejudice of Defendants David Keala, Maude Yamakawa, Ralph Murakami and Herman Aizawa in their individual capacities with regard to all claims that are or could have been brought in this action, including any and all claims for attorneys' fees and costs.

> This Offer of Judgment is conditioned upon its acceptance by Plaintiffs. This Offer shall be in complete satisfaction of all liability, damages, injuries, and claims against the State Defendants in the above-entitled action had or asserted by Plaintiffs.

Offer of Judgment. The parties agree that the Offer was not accepted by Plaintiffs.

The Court heard oral argument on the motions on February 2, 2004. At the hearing, the parties averred that they reached a settlement agreement dismissing Zane from the lawsuit;[5] Zane's MJP was withdrawn from consideration.

On February 23, 2004, the Court issued an Order Dismissing Plaintiffs' Counter-Motion for Summary Judgment; Granting in Part and Denying in Part State Defendants' Motion to Strike; Granting in Part and Denying in Part State Defendants' Motion for Judgment on the Pleadings and Summary Judgment; and Denying Plaintiffs' Motion for Summary Judgment ("February 23, 2004 Order"). Summarizing, the Court (1) dismissed Plaintiff's Counter-MSJ on grounds that it was not timely filed, (2) denied the State's Motion to Strike as to the expert witness disclosure, (3) found that Plaintiffs had not properly plead their purported IDEA claims, (4) dismissed Aizawa in his individual and official capacities based on Plaintiffs' conceded abandonment of claims, (5) dismissed Plaintiffs' 302A–1001 Claim on grounds that Plaintiffs did not assert any facts or allegations in support of their complaint and on Plaintiffs' conceded abandonment of this claim, (6) dismissed the Section 504 claims against Defendants Murakami and Yamakawa in their individual capacity because Section 504 cannot support a lawsuit against a public official in his or her individual capacity, (7) dismissed the Section 504 claims against the State Defendants on grounds that the Plaintiffs could not show exclusion from benefits or services, or discrimination, and could not show that any Defendant intentionally discriminated or acted with deliberate indifference toward John, (8) dismissed the Section 1983 claim against the State Defendants based on Eleventh Amendment immunity,[6] (9) dismissed Plaintiffs' state law claims against the State D.O.E., A–Plus, and Murakami and Yamakawa in their official capacity, based on Eleventh Amendment immunity, (10) dismissed Plaintiffs' state law claims against Keala and Zane in their official capacities, (11) dismissed Plaintiffs' state law claims against Murakami and Yamakawa in their individual capacity on grounds that Murakami and Yamakawa were entitled to qualified immunity, (12) dismissed the punitive damages claims against all defendants,[7] (13) denied Plaintiffs' MPSJ. Thus, after February 23, 2004, only Plaintiffs' Section 1983 and state law claims against Keala in his individual capacity remained. *See* February 23, 2004 Order at 61.[8]

On June 8, 2004, the case proceeded to jury trial. On June 29, 2004, the jury returned a verdict in favor of John on his claims for violation of his constitutional rights (Section 1983) and punitive damages only. The jury found against Jane on her

5. The settlement, dated March 25, 2004, between John, Jane and Zane, in her individual capacity, was for $9,750, including attorneys' fees and costs. *See* Ex. A to Def. Keala's Opp. to Plt.'s Mot. for Costs, filed 8/05/04.

6. Alternatively, the Court found that neither Defendant Murakami nor Yamakawa were directly involved in the Keala incident. The Court also dismissed Plaintiffs Section 1983 claim against Defendant Zane in her official capacity.

7. Pursuant to the Court's April 28, 2004 Order Granting Plaintiffs' Motion for Reconsideration, the Court reinstated Plaintiffs' punitive damages claim against Keala in his individual capacity.

8. On April 22, 2004, a Stipulation for Dismissal with Prejudice of All Claims Against Defendant Sonia Zane was filed.

claims for negligent infliction of emotional distress and loss of consortium. The jury awarded $1,125 in compensatory damages and $2,500 in punitive damages against Keala, for a total of $3,625 in damages.[9] Judgment was entered in favor of John and against Keala for these amounts on July 1, 2004.

On July 15, 2004, Plaintiffs filed a Motion for Award of Attorneys' Fees and Costs ("Attorneys' Fees Motion"). Defendant Keala filed an opposition on August 5, 2004 to which Plaintiffs replied on August 16, 2004.

On July 29, 2004, Defendant Keala filed a Bill of Costs. On August 2, 2004, Plaintiffs filed a Motion to Strike Defendant Keala's Bill of Costs. This Court referred the motions to Magistrate Judge Kevin S.C. Chang ("Special Master") to adjudicate as a special master. See Orders (July 16, 2004 and August 2, 2004).

On October 18, 2004, Judge Chang issued a Report of the Special Master on Plaintiffs' Motion for an Award of Attorneys' Fees and Costs, Defendant David Keala's Bill of Costs and Plaintiffs' Motion to Strike Defendant David Keala's Notice of Bill of Costs ("Report"). The Report makes the following findings and recommendations: (1) that Plaintiffs' Motion for Attorneys' Fees and Costs be granted in the amounts of $112,818.20 in attorneys' fees and $41,010.24 in costs; (2) that Defendant Keala's Bill of Costs be denied; and (3) that Plaintiffs' Motion to Strike Defendant Keala's Notice of Bill of Costs be denied.

On October 29, 2004, Keala filed Objections to Report of the Special Master. On November 9, 2004, Plaintiffs filed Objec-

tions to Report of the Special Master. Neither Keala nor Plaintiffs have requested a hearing with respect to their objections. After careful review, the Court finds this matter suitable for disposition without a hearing. See LR 7.2(d).

## STANDARD

In acting on a special master's order, report, or recommendation, the district court must afford an opportunity to be heard and may receive evidence. See Fed. R.Civ.P. 53(g)(1). The district court may adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the master with instructions. Id.

The district court must decide de novo all objections to findings of fact and/or conclusions of law made or recommended by the special master. See Fed.R.Civ.P. 53(g)(3) and (4) (amended in 2003 to change the standard of review for findings of fact made or recommended by a master); see also Summers v. Howard University, 374 F.3d 1188, 1195 n. 6 (D.C.Cir. 2004) (noting that Fed.R.Civ.P. 53 was amended in 2003 to provide for de novo review of a special master's fact findings by the district court). Matters of procedural discretion are reviewed for abuse of discretion. See Fed.R.Civ.P. 53(g)(5) and Advisory Committee Notes for 2003 Amendments.

## DISCUSSION

### I. RULE 68 OFFER OF JUDGMENT

On December 24, 2003, Defendants tendered an offer of judgment to Plaintiffs pursuant to Federal Rules of Civil Proce-

9. The jury found that Plaintiff had $250 in damages for the nature and extent of his injuries plus $11,000 in mental, physical, emotional pain and suffering; however, the jury apportioned only ten percent of Plaintiff's damages to the February 19, 1998 incident with Defendant Keala and the remaining ninety percent of the damages to a pre-existing injury or condition. Accordingly, the compensatory damages figure was reduced to $1,125. See Verdict (Jun. 29, 2004).

dure ("FRCP") 68 ("Rule 68"). The Special Master found that the Offer of Judgment did not meet the requirements of Rule 68 because: (1) the Offer of Judgment was jointly made without allocation of any specific amount to a particular Defendant, (2) the judgment would be entered against "Defendants in their official capacities" not against Keala in his individual capacity, and (3) the judgment was conditioned on Plaintiffs dismissal of the individual Defendants with prejudice. *See* Report at 20–22. Keala argues that the Offer of Judgment satisfied the requirements of Rule 68 and consequently, Plaintiffs are not entitled to attorneys fees or costs accrued after December 24, 2003. *See* Def.'s Objections at 19–21.

Rule 68 provides in relevant part:

At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued. If within 10 days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the clerk shall enter judgment. An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs. If the judgment finally

obtained is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer. The fact that an offer is made but not accepted does not preclude a subsequent offer. . . . .

Fed.R.Civ.P. 68. The purpose of Rule 68 is "to encourage settlement of legal disputes by forcing a plaintiff to weigh the risk of incurring post-offer costs and fees he may not be able of recover even if successful on his claim." *Herrington v. County of Sonoma*, 12 F.3d 901 (9th Cir. 1993). The defendant bears the burden of showing that the offer was more favorable than the judgment. *See Gavoni v. Dobbs House, Inc.*, 164 F.3d 1071 (7th Cir.1999). Rule 68 has been described as a "mandatory rule to be narrowly applied." *Johnston v. Penrod Drilling Co.*, 803 F.2d 867 (5th Cir.1986) (analyzing *Delta Air Lines v. August*, 450 U.S. 346, 101 S.Ct. 1146, 67 L.Ed.2d 287 (1981)).

In *Herrington*, the Ninth Circuit listed the following requirements of a valid Rule 68 offer:

"An offer of judgment should be served on the adverse party . . . . The offer must specify a definite sum for which judgment may be entered, which plaintiff can either accept or reject. It must be unconditional[10] and must include 'costs then accrued.'" The consequences of rejecting an offer are clear: **"If the judgment finally obtained is not more favorable than the offer,** the

---

**10.** Strict adherence to the requirement stated in *Herrington* that the offer of judgment be unconditional is questionable. *Herrington* did not involve a conditional offer or any substantive discussion of the effect of a conditional offer. Furthermore, the Ninth Circuit, in *Lang v. Gates*, 36 F.3d 73 (9th Cir.1994), held that a defense offer conditioned upon joint acceptance by both plaintiffs qualifies for Rule 68 treatment. *See id.* at 75 ("In determining whether an offer is proper under Rule

68, courts will apply traditional principles of contract construction. *Herrington v. County of Sonoma*, 12 F.3d 901, 907 (9th Cir.1993). Conditional offers have long been recognized as valid under such principles. Restatement (Second) of Contracts, § 29 cmt. a . . . . We see no reason to depart from these principles here."); *see also Mite v. Falstaff*, 106 F.R.D. 434, 435 (N.D.Ill.1985) (offer not defective on account of "no admission of liability" condition).

offeree must pay the costs incurred after the making of the offer."

*Id.* (internal citations omitted) (emphasis added). Unapportioned joint offers made by multiple defendants to a single plaintiff or by a single defendant to multiple plaintiffs, though not invalid per se, have proved problematic with respect to determining whether the "judgment finally obtained is more favorable than the offer." *See, e.g., Johnston,* 803 F.2d at 870–71 (joint offer by multiple defendants), *Gavoni,* 164 F.3d at 1076–77 (offer by defendant to multiple (3) plaintiffs); *see also* Schwartzer, Tashima, Wagstaffe, FEDERAL CIVIL PROCEDURE BEFORE TRIAL § 15:152.1 (2004) ("When an offer of judgment is made in a multi-party case (several parties on each side), it should specify how much each defendant is offering to each plaintiff. Otherwise, if the offer is rejected, it may be impossible to tell whether the judgment obtained by a particular plaintiff against a particular defendant is 'more favorable' than the offer."). "Rule 68 is a mandatory rule designed to operate automatically by a comparison of two clearly defined figures." *Johnston,* 803 F.2d at 870; *see also Gavoni,* 164 F.3d at 1076 ("courts also need easily comparable sums. In applying Rule 68, courts have 'no discretion to alter or modify the parties' agreement.' ").

. *Johnston* is illustrative of the problems associated with unapportioned joint offers. There, Defendants Penrod and Hughes made an unapportioned Rule 68 offer of judgment to Plaintiff Johnston for $7,500. *See* 803 F.2d at 869. Johnston later settled with Hughes for $3,500 and proceeded to trial against Penrod only. *See id.* The jury awarded Johnston $6,526.80 after a reduction for contributory negligence. Penrod sought to invoke Rule 68's cost shifting mechanism on grounds that the judgment awarded was less than the offer. *See id.* Johnston argued that his combined recovery from Hughes and Penrod was greater than the judgment offered

pursuant to Rule 68. *See id.* After sanctioning the validity of a joint offer by Defendants, the Fifth Circuit Court of Appeals concluded that Rule 68 did not apply under the circumstances. *See id.* at 870. In so doing, the *Johnston* court reasoned:

Penrod argues that the judgment obtained against it is comparable to the joint offer because a properly instructed jury assessed Johnston's total damages without regard to whether all of the original defendants were still in the case. Although this is true, the settlement may have nevertheless had an effect on the damage award. The character and dynamics of a trial often are drastically changed when one or more parties are dismissed. In this case, for example, if the jury had found Hughes and Penrod at fault, it is likely that it would have reduced the extent of Johnston's contributory negligence. In sum, the figure represented by the joint offer of Hughes and Penrod on the one hand and the dollar judgment obtained only against Penrod on the other are not comparable figures for the purpose of shifting costs under Rule 68.

. . . .

Neither should the district court undertake an apportionment of the joint offer in an attempt to obtain more comparable figures. Rule 68 is a mandatory rule designed to operate automatically by a comparison of two clearly defined figures . . . . .

A party in Penrod's position is not without a remedy. The rule expressly provides for successive offers and nothing prevented Penrod from making a new offer of judgment in compliance with Rule 68 after Hughes settled with Johnston. If Penrod had made such an offer in excess of the judgment ultimately obtained against it, Rule 68 would clearly apply.

*Id.* at 870–71. A number of courts outside this jurisdiction, like this Court, have found the reasoning of *Johnston* prudent. *See, e.g., Harbor Motor Co. v. Arnell Chevrolet–Geo, Incorp.,* 265 F.3d 638, 648–49 (7th Cir.2001) ("we see no way to compare the $20,100 offer of judgment made jointly by the Post–Tribune and Arnell with the $12,500 judgment that Harbor obtained against Arnell alone"), *Jones v. Fleetwood Motor Homes,* 127 F.Supp.2d 958, 970–71 (N.D.Ill.2000) ("The offer was for settlement of claims of both Fleetwood and Crystal Valley. Defendants failed to specify how much was being offered from each defendant. Without knowing how much was being offered from each defendant, there is no precise number to compare with the $5,000.00 judgment that was entered against Fleetwood alone.").

■ The Court finds that the $3,625 judgment (exclusive of costs) obtained by John against Keala in his individual capacity is not comparable with the $90,250 judgment (inclusive of costs) to be taken against Defendants in their official capacities that was offered to both John and Jane. First, the Court cannot, nor should it attempt to, determine what portion of the $90,250 offered by Defendants was offered by Keala alone. *See Johnston,* 803 F.2d at 870; *see also Harbor Motor Co.,* 265 F.3d at 648, *Jones,* 127 F.Supp.2d at 970–71. Thus, the Court has no "clearly defined" offer amount with which to compare the $3,650 judgment obtained by John and attorneys fees and costs to be awarded. *See id.* Notably, like in *Johnston,* the dynamics of the case changed significantly with the dismissal of the State Defendants in February of 2004, and of Zane [11] in April 2004, and Keala had ample time to submit a subsequent Rule 68 offer prior to trial in June of 2004.[12] *See Johnston,* 803 F.2d at 870–71.

Second, the Court cannot apportion the amount offered between Plaintiffs John and Jane. Again, for this reason as well, there is no "clearly defined" offer amount to compare against John's recovery of $3,650 and attorneys fees and costs to be awarded. Due to the mandatory nature of Rule 68, courts require that the offer give the plaintiff "a clear baseline from which plaintiffs may evaluate the merits of their case relative to the value of the offer." *Gavoni,* 164 F.3d at 1076; *see also Alfonso v. Aufiero,* 66 F.Supp.2d 183, 202 (D.Mass. 1999) (citing Gavoni for the proposition that "requiring the offeror to make an offer precise enough to enable each offeree, always a plaintiff, to assess the merits of her claim relative to the value of the offer is the better rule"). Because the State Defendants' Rule 68 offer was unapportioned, "plaintiffs could not have 'evaluated the individualized values of the offer' and compared them to their own independent prospects for success before a jury." *See Alfonso,* 66 F.Supp.2d at 202.

Last, the individual-official capacity distinction also renders the judgment obtained and the judgment offered less comparable. A judgment against Keala in his official capacity is different than a judgment against Keala in his individual capacity because in the latter situation, Keala, not the State, would be responsible for satisfaction of the judgment. A judgment for a larger amount against a defendant in his or her individual capacity may be more or less favorable than a judgment for a smaller amount against the same defendant in his or her official capacity depending on the defendant's ability to pay.

---

**11.** Zane settled with Plaintiffs for $9,750 (including fees and costs) pursuant to a settlement agreement dated March 25, 2004.

**12.** The Court notes that Plaintiffs may very well have accepted a subsequent offer by Keala on similar terms after dismissal of the State Defendants.

While perhaps less of a consideration in this case given Keala's contention that Plaintiffs were aware that he was nearly judgment proof, *see* Keala's Opp. to Plts' Mot. for Attys' Fees at 7, the fact that John obtained judgment against Keala in his individual capacity and not in his official capacity, as was offered, increases the difficulty of comparing the judgment obtained with the judgment offered. In summary, the Court agrees with the Special Master that the cost-shifting mechanism of Rule 68 should not apply under these circumstances.

## II. PLAINTIFFS' ATTORNEYS' FEES REQUEST

The Special Master concluded that Plaintiffs were entitled to a total of $112,818.20 in attorneys' fees (including general excise tax). In arriving at this figure, the Special Master determined that deviation from the lodestar method of calculating the fee award, i.e. a reasonable hourly rate multiplied by the number of hours reasonably expended, was not warranted. *See* Report at 13. The Court set the hourly rates for attorneys Feldman, Floyd and Levin ("Plaintiffs' counsel") at $140, $275, and $275, respectively. Next, the Special Master reduced the number of hours reported by Plaintiffs' counsel for the period December 1999 to February 23, 2004 (following the dismissal of the State Defendants), with the exception of hours billed for work defending against Keala's appeal to the Ninth Circuit of the qualified immunity issue,[13] by 86% to reflect that Plaintiffs did not prevail against all Defendants (State Defendants and Zane). Time

billed after February 24, 2004 was not discounted save specific reductions to certain entries for excessiveness and failure to provide adequate documentation or descriptions. *See* Report at 30.

Plaintiffs contend that the Special Master inappropriately reduced Plaintiffs' attorneys' fees incurred between December 1999 and February 23, 2004 by 86% but "in the spirit of compromise, Plaintiffs stipulate to a reduction of fees by thirty percent (30%)." Plts' Objections to Report at 12.[14] Plaintiffs argue that they should be compensated for work done on their unsuccessful claims because all of the claims were inextricably intertwined. *See* Plts.' Objections to Report at 10. Notably, Plaintiffs do not object to the hourly rate set by the Special Master or to the exclusion of particular hours deemed excessive or insufficiently documented.

Keala, on the other hand, argues that application of the lodestar method was improper because Plaintiff's success was de minimus and for his private personal benefit. Keala's Objections to Report at 2–5. Keala also contends that the Special Master misapplied the relevant lodestar factors and should have reduced the fees awarded based on the lack of difficulty of the legal and factual questions presented at trial, the level of skill and value of the legal services rendered, the awards in similar cases, and the amount involved and the results obtained. *See id.* at 6–14. Keala also points out that the Special Master did not consider a number of objections made to specific time entries reported by Plaintiffs' counsel. *See id.* at 16–18.

---

13. The Special Master noted that he could not determine, separate and/or attribute time spent by Plaintiffs' counsel to a particular claim or Defendant during this time period except for time spent on the Ninth Circuit appeal.

14. The Special Master rejected Plaintiffs' offer to reduce their fee requests by thirty percent (30%) on the basis that the offer was "inadequate given the large discrepancy between the amount awarded to Plaintiffs by the jury and the total amount of accrued fees and costs stated by Plaintiffs." (Report of the Special Master, at 12–13).

## A. Application of the Lodestar Method

Prevailing parties on a Section 1983 claim are entitled to "reasonable attorneys' fees" pursuant to 42 U.S.C. § 1988. *See* 42 U.S.C. § 1988. "In determining the amount of the award, a court generally should begin by calculating the so-called 'lodestar' amount, arrived at by multiplying the number of hours reasonably spent in achieving the results obtained by a reasonably hourly rate." *Friend v. Kolodzieczak*, 72 F.3d 1386, 1389 (9th Cir.1995). " 'The lodestar determination has emerged as the predominate element of the analysis' in determining a reasonable attorney's fee award." *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir.1996).

Keala argues that the Court should depart from the lodestar method of calculating attorneys' fees under the exception established by the United Supreme Court in *Farrar v. Hobby*, 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). There, the Court "held that 'nominal damages' cases in which the relief is de minimus are exempted from the general requirements that govern the calculation of attorney's fees, including the requirement that the lodestar first be calculated." *Morales*, 96 F.3d at 363. The *Farrar* exception "is limited to cases in which the civil rights plaintiff 'prevailed' but received only nominal damages and achieved only 'technical' success." The de minimus or technical nature of a victory is shown where there is a substantial difference between the judgment recovered and the recovery sought, the legal issue on which the plaintiff claims to have prevailed is insignificant, and no public goal is at stake. *See Farrar*, 506 U.S. at 121–22, 113 S.Ct. 566 (O'Conner, J. concurring); *see also Morales*, 96 F.3d at 365 ("Success is measured not only by the amount of recovery but also in terms of the significance of the legal issue on which the plaintiff prevailed and the public purpose of the litigation served.").

The Special Master applied the lodestar method reasoning that although Plaintiffs' recovery was far removed from their attorneys' expectations and estimates, it was not "nominal, trivial or insubstantial." Report at 13. The Special Master noted that the facts and circumstances of *Farrar* were significantly different from this case. *See id.*

The Court agrees with the Special Master. Although the judgment obtained by John against Keala was less than his attorneys likely anticipated,[15] abandonment of the lodestar method is not warranted here. The legal issues on which John prevailed, i.e. Section 1983 and punitive damages, were not insignificant. The Court also cannot conclude that this lawsuit does not in some, though perhaps indirect, way serve the public goal of protecting the constitutional rights of other similarly situated students. *Cf. Morales*, 96 F.3d at 365 (noting district court's finding that "the verdict [$17,500 in damages] 'constitutes a warning to law-enforcement officers not to treat civilians unconstitutionally' "). As discussed below, however, the Court will consider the "results obtained" in calculating the lodestar amount in accordance with *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), and its progeny.

---

**15.** Plaintiffs did not request a specific amount in the Complaint or First Amended Complaint. Plaintiffs mentioned in their Final Pretrial Statement that the cost of family therapy for John and Jane would cost $95,000 and that they were entitled to "a substantial award of damages to be shown at trial." Plts' Final Pretrial Statement, filed 2/17/04, at 9–10.

## B. Calculation of the Lodestar Amount

■ Factors that should be considered in fashioning the reasonable number of hours expended and the reasonable hourly rate of the lodestar include "(1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, (4) the results obtained, and (5) the contingent nature of the fee agreement" ("subsumed factors"). *Morales*, 96 F.3d at 364 n. 9 (internal citations omitted). The Ninth Circuit prefers that the district court adjust the reasonable number of hours or reasonable hourly rate at the first step when determining the lodestar; "adjusting the lodestar on the basis of subsumed reasonableness factors after the lodestar has been calculated ... is a disfavored calculation." *Id.*

With respect to the subsumed factors discussed above, Keala argues that the Court should make reductions based on the lack of difficulty and the level of skill and value of the legal services rendered. Keala also supports a reduction for the "de minimus" success achieved by Plaintiffs and based on specific objections to time entries by Plaintiffs' counsel. Plaintiffs, on the other hand, object to the 86% pro rata reduction based on the number of defendants which plaintiffs were not successful against in the hours reported by Plaintiffs' counsel for the period December 1999 to February 22, 2004.

■ The Court finds that a reduction, in the amounts discussed *infra* Section II. B.2., is appropriate on the basis of insufficient documentation and/or excessive billing and the "results obtained." The reduction will be reflected in the Court's computation of the hours reasonably expended. The Court, given its familiarity with the legal issues of the case and Plaintiffs' counsels' performance, is not persuaded that the hourly rate or number of hour expended figure should be reduced for lack of difficulty of the issues or the level of skill and value of the legal services rendered.

### 1. Reasonable Hourly Rate

■ The Special Master set the reasonable hourly rates for Plaintiffs' counsel as follows:

| | |
|---|---|
| Shelby Floyd | $275.00 |
| Stanley Levin | $275.00 |
| Edie Feldman | $140.00 |
| Bruce Ellis | $ 85.00 (paralegal) |

Neither Keala nor Plaintiffs objected specifically to the hourly rates established by the Special Master. The Court finds that these rates are reasonable in consideration of the prevailing market rates in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. *See Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th Cir.2001).

### 2. Hours Reasonably Expended

#### a. Insufficient documentation/excessive billing

The Special Master deducted time due to insufficient documentation and excessive billing. Plaintiffs did not object to this deduction. Keala contends that the Special Master did not address all of his objections to Plaintiffs' counsel's billings. *See* Keala's Objections at 15–17. Based on review of the invoices submitted by Plaintiffs' counsel in connection with Plaintiffs' Motion for Attorneys' Fees and Costs,[16]

---

16. The Court has reviewed all of Plaintiffs' counsels' time entries, including the dates listed on pages 16 –17 of Keala's Objections to the Report. To the extent that reductions are not reflected in appendices A, B or C to this Order, the Court denies Keala's objections. *See Gates v. Deukmejian*, 987 F.2d 1392, 1400 (9th Cir.1992) ("we reject defendants' argument that the district court abused its discretion in failing expressly to rule on each of

the Court agrees with the Special Master that Plaintiffs' counsel's reported hours should be reduced on these grounds.

### i. Insufficient documentation

■ Reduction of the hours reported is warranted where counsel has provided inadequate documentation. *Cunningham,* 879 F.2d at 484; *see also Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210 (9th Cir.1986) ("counsel bears the burden of submitting detailed time records justifying the hours claimed to have been expended"). Although "[t]he cases do not indicate that every minute of an attorney's time must be documented; they do, however, require that there be adequate description of how the time was spent, whether it be on research or some other aspect of the litigation . . . ." *Pac. W. Cable Co. v. City of Sacramento,* 693 F.Supp. 865, 870 (E.D.Cal.1988). Counsel should, at the very least, "identify the general subject matter of his time expenditures." *Hensley,* 461 U.S. at 437 n. 12, 103 S.Ct. 1933.

The Court finds that a reduction in the hours reported by attorneys Floyd, Levin and Feldman in the following amounts is appropriate due to lack of sufficient documentation:

| Attorney | Number of Hours |
| --- | --- |
| Floyd | 1.6 |
| Levin | 17.7 |
| Feldman | 24.5 |

The time reductions for each attorney are specifically identified in Appendix A to this Order. Most reductions were made because the descriptions provided did not indicate "the general subject matter" of the communications or services provided and hence, did not provide sufficient justification that such time was reasonably expended.

### ii. Excessive billing

■ The hours reported by counsel may be reduced "if the hours expended are deemed excessive or otherwise unnecessary." *Chalmers,* 796 F.2d at 1210. Clerical and secretarial tasks should not be billed at a paralegal or lawyer's rate. *See Davis v. City & County of San Francisco,* 976 F.2d 1536, 1543 (9th Cir.1992), vacated on other grounds, 984 F.2d 345 (9th Cir. 1993) ("It simply is not reasonable for a lawyer to bill, at her regular hourly rate, for tasks that a non-attorney employed by her could perform at a much lower cost.").

The Court finds that a reduction in the hours reported by attorneys Floyd, Levin and Feldman and paralegal Ellis in the following amounts is appropriate on grounds that such hours are excessive or unnecessary:

| Attorney | Number of Hours |
| --- | --- |
| Floyd | 0.2 |
| Levin | 0.5 |
| Feldman | 13.2 |
| Ellis (paralegal) | 2.0 |

The Court agrees with the Special Master that 4.6 hours for a telephone call with the Court's law clerk, and for reviewing the 9th Circuit model jury instructions, federal civil instructions, Hawaii civil instructions and preparing revised jury instructions is excessive. *See* Report at 27. The Court also agrees with the Special Master that it is unreasonable to charge for a paralegal's time spent traveling to and attending a status conference when

their specific objections. The 'concise but clear' explanation requirement mandates that the district court explain the reasons for its fees award; it does not demand that the court make findings as to each of defendants' specific objections to plaintiffs' billing judgment").

two attorneys are present. *See id.* Based on a review of the billing invoices submitted by Plaintiffs' counsel, the Court finds that the time entries identified in Appendix B to this Order are excessive.

### b. Results obtained

 *Hensley* requires the Court to consider the "results obtained" in calculating the lodestar figure. *See Morales,* 96 F.3d at 364. In determining the appropriate reduction for "limited success" the court must: (1) consider whether the plaintiff failed to prevail on claims that were unrelated to the claims on which he succeeded ("step 1") and (2) consider whether the plaintiff achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award ("step two"). *See Webb v. Sloan,* 330 F.3d 1158, 1169 (9th Cir.2003).

#### i. Step 1

In determining the appropriate reduction for limited success, the Court must consider whether the plaintiff failed to prevail on claims that were unrelated to the claims on which the plaintiff prevailed. *See Webb,* 330 F.3d at 1168. "Related claims involve a common core of facts or are based on related legal theories." *Id.* Hours spent on unrelated, unsuccessful claims should not be included in an award of attorneys fees. *Id.*

John asserted the following claims against Defendants in either the Complaint or First Amended Complaint: (1) Violation of Section 1983 and 1981, (2) Violation of Section 504, (3) Negligence and Gross Negligence, (4) False Imprisonment, (5) Assault and Battery, (6) Negligent Infliction of Emotional Distress, (7) Violation of HRS § 302A–1001 and (8) Punitive Damages. Jane asserted claims for (1) Negligent Infliction of Emotional Distress and (2) Loss of Consortium. John prevailed on just his Section 1983 and Punitive Damages claims against Keala, in his individual capacity, while Jane did not prevail on any of her claims against any of the Defendants.

Although the legal theories underlying the claims asserted by Plaintiffs against Defendants are distinct, the claims are based on a common core of facts: (1) Zane's alleged "smacking" of John and (2) Keala's taping of John's head to a tree. Also, although the Zane and Keala incidents were distinct, *see* Order, filed 1/15/02, at 3 n. 3, the legal theories (i.e. Section 1983) against Zane and Keala overlapped. To the extent that "truly unrelated claims" exist, the Court will make an appropriate reduction in step 2 discussed below. *See Webb,* 330 F.3d at 1169 ("If it is impossible to isolate the truly unrelated claims from those related claims, the district court should instead reflect that limited success in Hensley's second step: the significance of the overall relief in relation to the hours reasonably expended on the litigation.").

#### ii. Step 2

 Step 2 requires the district court to "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Webb,* 330 F.3d at 1168. A discretionary reduction to reflect limited success against some of the defendants is appropriate at this step. *See id.* at 1169. In determining the appropriate reduction, it is proper to analyze the importance of each defendant and the claims brought against them to the Plaintiff's overall case.[17] *See Cunningham,* 879 F.2d at 486

---

17. The Court agrees with Plaintiff that the Ninth Circuit does not sanction a proportionate reduction of the lodestar amount based on the number of defendants dismissed. *See Cunningham,* 879 F.2d at 486.

("The mere fact that plaintiff was not victorious as to all defendants does not automatically bar an attorneys fees award. However, the amount of attorney's fees they receive should be based on the work performed on the issues in which they were successful."). In addition to the lack of success against all of the Defendants save Keala in his individual capacity, the Court must also "give primary consideration to ... the amount of damages awarded as compared to the amount of damages sought is minimal[.]" *Corder v. Brown*, 25 F.3d 833, 837 (9th Cir.1994).

The relief obtained by Plaintiffs is limited in various respects.[18] First, Jane was not successful on any of her claims against any of the Defendants. Second, Plaintiffs did not succeed on any of their claims against any of the State Defendants or against Defendants Aizawa, Murakami and Yamakawa in their individual capacities. Third, John obtained a modest recovery against Keala in his individual capacity on his Section 1983 and Punitive Damages claims only.

██ In light of the above considerations, the Court finds that a 55% reduction of the total number of hours reported by Plaintiffs' counsel, after deducting specific amounts for insufficient documen- tation or excessiveness, is appropriate to account for the "results obtained" by Plaintiffs. The Court provides the following "concise but clear" explanation in support of its 55% reduction in the number of hours reasonably expended. *See Gates v. Deukmejian*, 987 F.2d 1392, 1400 (9th Cir.1992) ("decisions of district courts employing percentages in cases involving large fee requests are subject to heightened scrutiny and the use of percentages, in any case, neither discharges the district court from its responsibility to set forth a 'concise but clear' explanation of the reasons for choosing a given percentage reduction nor from its duty to independently review the applicant's fee request").

First, the Court considers Jane's lack of success. The Court recognizes that this case was predominately about John's claims against Defendants for violation of his rights under federal and state law. Jane's claims for negligent infliction of emotional distress and loss of consortium were peripheral, and in the Court's estimation, constituted a small portion of the overall case. The billing invoices submitted confirm that Plaintiffs' counsel expended most of their time on claims asserted by John. Thus, the Court finds that a 5%

**18.** Plaintiffs are not entitled to fees on the basis of success against Zane. *See Pekarsky v. Ariyoshi*, 695 F.2d 352, 355 (9th Cir.1982) (improper to include in attorneys' fee award fees attributable to work performed in prevailing against settling defendant where settlement includes such fees). The Zane settlement agreement (between John, Jane and Zane, in her individual capacity) is inclusive of attorneys' fees and costs though it expressly provides that the agreement "is without prejudice to any claim Plaintiffs may have against the State of Hawaii for attorney's fees and costs under 42 U.S.C. § 1988." *See* Ex. A to Nabeta Decl., filed 8/05/04, at 1, 2, 5. The claims against Zane in her official capacity, however, were dismissed pursuant to the Court's Order of February 23, 2004. In any event, even if Plaintiffs had succeeded against Zane in her official capacity, though they did not, an award under Section 1988 against the State is not warranted because Plaintiffs did not "prevail" against the State. *See Houston v. Reich*, 932 F.2d 883, 890 (10th Cir.1991) ("We hold that after the City was dismissed from this action at the close of this case, there was no basis in law for the district court's subsequent Order directing that City ... levy and pay the judgments. Houston did not 'prevail' against the City."); *see also Dean v. Gladney*, 621 F.2d 1331, 1337–38 (5th Cir. 1980) (attorneys' fees not awardable "against parties properly dismissed from the action merely because [plaintiffs] were 'prevailing parties' with respect to other parties in the suit").

reduction on account of Jane's lack of success is appropriate.

Next, the Court considers that John did not succeed against the State Defendants (State D.O.E., A–Plus, and Defendants Aizawa, Murakami, Yamakawa, Zane, and Keala, in their official capacities) or Defendants Aizawa, Murakami, Yamakawa, and Zane,[19] in their individual capacities. The Complaint and First Amended Complaint predicated liability on three themes: (1) The State's failure to train teacher and administrators and/or to implement procedures to ensure proper treatment of John, a disabled child, as demonstrated by the Keala and Zane incidents; (2) the Keala incident; and (3) the Zane incident. With the exception of the 504 Claim, which was asserted specifically against the State D.O.E., Yamakawa and Keala, and the Punitive Damages claim, which was asserted against the State D.O.E. and Keala, all of the other claims were asserted against "Defendants." The allegations against Keala, however, served as the mainstay of the lawsuit. In consideration of the claims and remedies pursued in the litigation, the Court finds that a 20% reduction is appropriate to account for John's lack of success against all Defendants save Keala, in his individual capacity. *See Corder*, 947 F.2d at 378. (Twenty percent reduction for limited success sustainable due to lack of success against defendants).

Finally, the Court turns to the amount of the damage award. The monetary relief obtained by John against Keala was modest, $3,650, inclusive of punitive damages. Measured against the years of litigation, the considerable amount of resources expended on this case, and Plaintiffs' (and their counsels') expectations, John suffered a substantial defeat. Although the judgment against Keala

may in some way constitute a "warning" to other school personnel to refrain from similar unconstitutional conduct, the Court does not regard the public policy aspect of the judgment as significantly enhancing the "results obtained" by John. *See Morales*, 96 F.3d at 364–65 ("district court should consider not only the monetary results but also the significant nonmonetary results [plaintiff] achieved for himself and other members of society."). The evidence presented did not suggest that Keala's disciplinary methods were employed by other school personnel or pursuant to school policy such that the results of this case will confer an immediate benefit on other school children. *Cf. Sorenson*, 239 F.3d at 1147. Nor is the size of the punitive damages award against Keala likely to significantly deter others from engaging in similar conduct in violation of students' constitutional rights. Moreover, the State D.O.E. promptly terminated Keala.

Where, as here, the monetary relief obtained is far less than that sought by the plaintiff, the Ninth Circuit has sanctioned as much as a 50% reduction of attorneys' fees for lack of success. *See Harris v. Marhoefer*, 24 F.3d 16, 18–19 (9th Cir. 1994) (reduction of attorneys' fees by 50% affirmed after Plaintiff recovered $25,000 judgment on $5 million damage prayer); *see also Mares v. Credit Bureau of Raton*, 801 F.2d 1197 (10th Cir.1986) (noted by *Gates*, 987 F.2d at 1399, for 77% reduction where plaintiffs awarded damages totaling $2,500 inclusive of $500 punitive damage award, on Fair Credit Reporting Act claim). The Court finds that a 30% reduction is appropriate to account for the modest $3,650 damage award and the limited

---

**19.** Notably, the Special Master concluded that Plaintiffs were not prevailing parties as against Zane and Plaintiffs have not specifically objected to this finding. *See supra* note 18.

public policy aspect of the judgment obtained by John.

To summarize, the Court finds that a 55% reduction of the hours reported by Plaintiffs' counsel (including paralegal fees) is appropriate to account for the limited results obtained. Applying a 55% total reduction, the Court concludes that a total of 530.58 hours were reasonably expended.

## C. Summary Of The Lodestar Calculation

| | Floyd | Levin | Feldman | Ellis |
|---|---|---|---|---|
| Total Hrs Reported | 63.60 | 250.75 | 906.2 | 18.20 |
| **Hour Reductions** | | | | |
| Inadequate Doc. | 1.6 | 17.7 | 24.5 | 0 |
| Excessive/Unnec. | 0.2 | 0.5 | 13.2 | 2.0 |
| subtotal (1) | 61.8 | 232.55 | 868.50 | 16.2 |
| Results Obtained | (55%) | (55%) | (55%) | (55%) |
| **Total Reasonable Hours Expended** | 27.81 | 104.65 | 390.83 | 7.29 |
| **Reas. Hourly Rate** | $ 275 | $ 275 | $ 140 | $ 85 |
| **Total/Attorney** | $7,647.75 | $28,778.75 | $54,716.20 | $619.65 |
| GET (4.166%) | $ 318.61 | $ 1,198.92 | $ 2,279.48 | $ 25.81 |
| Total + GET | $7,966.36 | $29,977.67 | $56,995.68 | $645.46 |

**LODESTAR AMOUNT = $95,950.79 ***

\* Paralegal expense reported by Attorney Feldman in the amount of $365.62 included in the lodestar. *See infra* note 23.

## D. Adjustment of the Lodestar Amount Based on Factors Not Subsumed In the Initial Calculation

■ "There is a strong presumption that the lodestar figure represents a reasonable fee[;]" the lodestar amount is adjusted only in "rare instances." *Morales*, 96 F.3d at 364, n. 8. Keala urges the Court to reduce the lodestar amount on the basis of "awards in similar cases." The "awards in similar cases" factor is not subsumed in the initial calculation of the lodestar amount such that a further reduction can be justified on this ground. *See id.* Keala argues that the attorneys' fees and costs must be reduced to "reflect the limited degree of plaintiff's success." Keala's Objections at 11.

The Court finds that the lodestar amount should not be adjusted on the basis of awards in similar cases. First, Keala offers the Court little basis for comparison. In three cases cited by Keala—*LeMaire v. Maass*, 12 F.3d 1444 (9th Cir.1993), *Corder v. Brown*, 25 F.3d 833 (9th Cir.1994), and *Webb v. Sloan*, 330 F.3d 1158 (9th Cir.2003)—the Ninth Circuit vacated the fee award made by the district court. Thus, these cases, in addition to involving factual circumstances distinct from this case, do not provide the Court with figures to compare the lodestar amount in this case against. Second, it is well-settled that fee awards under Section 1988 need not "necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers."

*City of Riverside*, 477 U.S. at 574, 106 S.Ct. 2686. Third, as required, the Plaintiffs' degree of success has already been factored into calculation of the lodestar amount. *See Cunningham*, 879 F.2d at 488. Last, based on a review of some attorneys' fee awards made in other civil rights cases, the lodestar amount of approximately $96,000 does not appear significantly dissimilar or excessive. *See, e.g., Corder v. Gates*, 104 F.3d 247, 248 (9th Cir.1996) ($79,041 total attorneys' fee award on remand following Ninth Circuit's instructions where jury awarded plaintiff $24,006), *Northington v. Marin*, 102 F.3d 1564 (10th Cir.1996) (attorneys' fees award of $93,649.61 not excessive in case where inmate recovered $5,000 judgment). Accordingly, the Court will not reduce the lodestar amount on the basis of "awards in similar cases."

### E. Attorneys Fees' Expended In Motion For Fees

■ Plaintiffs request $5,919.20 in additional fees and costs for work done in connection with their Motion for Attorneys' Fees and Costs. Generally, "time spent in establishing an amount of fees awardable under section 1988 is compensable." *Guerrero v. Cummings*, 70 F.3d 1111, 1113 (9th Cir.1995). Keala did not respond to Plaintiffs' request for additional attorneys' fees.

The Court finds that 40.1[20] of the 40.5 hours reported by Attorney Feldman was reasonably expended on additional work on Plaintiffs' Attorneys' Fee Motion. The Court reduces Plaintiffs' "fees-on-fees" request by 55% for the reasons discussed *supra* with respect to the lodestar calculation. *See Thompson v. Gomez*, 45 F.3d

1365, 1368 (9th Cir.1995) (district court has discretion to reduce "fees-on-fees" award to reflect percentage of "merits fees" recovered). Accordingly, Plaintiffs are entitled to an additional $2,631.55[21] in attorneys' fees and $22.40 in costs.

### III. PLAINTIFFS' REQUEST FOR COSTS

As noted by the Special Master, Plaintiffs did not file a Bill of Costs pursuant to FRCP 54(d)(1), which precludes an award of taxable costs pursuant to 28 U.S.C. § 1920. *See* Report at 32. Thus, Plaintiffs' entitlement to costs, if at all, arises under Section 1988.

■ A prevailing party "may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'" *Harris*, 24 F.3d at 19. Reasonable expenses in excess of taxable costs may be proper. *See id.; Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4, 30 (D.C.Cir.1984) ("the authority granted in Section 1988 to award a 'reasonable attorney's fee' included in the authority to award those reasonable out-of-pocket expenses incurred by the attorney which are normally charge to a fee-paying client, in the course of providing legal services"), *overruled on other grounds, Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516 (D.C.Cir.1988). Out-of-pocket expenses for long distance telephone calls, messenger service, postage, facsimile, computerized legal research, and travel are ordinarily allowed under Section 1988. *See Erickson v. City of Topeka*, 239 F.Supp.2d 1202, 1211–12 (D.Kan.2002), *Robins v. Scholastic Book Fairs*, 928

---

**20.** The Court reduced the number of hours reported by Attorney Feldman by 0.4 on account of an apparent error in the number of hours reported on 11/07/04. *See* Ex. C to Plts.' Objections to Report at 2.

**21.** This figure includes general excise tax at the rate of 4.166%.

F.Supp. 1027, 1035–36; *see also Burt v. Hennessey,* 929 F.2d 457, 459 (9th Cir. 1991) (paralegal and secretarial costs, xerox copies, witness fees, photos, filing and service of pleadings). On the other hand, "[r]outine expenses which are incorporated into attorneys' rates as routine office overhead are not recoverable[.]" *Cleveland Area Board of Realtors v. City of Euclid,* 965 F.Supp. 1017, (N.D.Ohio 1997).

The Special Master found that Plaintiffs were entitled to $41,010.24 of the $52,609.32 costs requested after making reductions for (1) Knight Investigations ($8,033.08), (2) Video Teleconferencing ($1,082.00), (3) Litigation Support ($877.50), and (4) duplicate copying costs ($1,606.50).[22] Plaintiffs argue that they should have been awarded these expenses and provide additional information to justify such an award. Keala asserts that the Special Master should not have recommended a cost award that was more than thirteen times the amount of the jury award and reinstates objections asserted at appendices 10 and 11 (primarily regarding expert witness fees) to his Opposition to Plaintiffs' Motion for Attorneys' Fees and Costs.

The Court finds that the additional information provided in connection with Plaintiffs' Objections to the Report of the Special Master provides sufficient explanation that the following costs were reasonably incurred by Plaintiffs' counsel as out-of-pocket expenses: (1) Knight Investigations ($8,033.08), (2) Video Teleconferencing ($1,082.00), (3) Litigation Support[23] (secretarial services), and (4) duplicate copying costs ($1,606.50). The Court also grants Rainell Javier's (Jane) request for reimbursement of litigation expenses which she attests "was reasonably incurred in the prosecution of my son's [John's] case against David Keala." 7/15/04 Javier Decl. ¶ 3. John, as a prevailing party, is entitled to his reasonable expenses incurred in litigating his Section 1983 claim. *See Laffey,* 746 F.2d at 30 ("The legislative record shows beyond doubt that prevailing plaintiffs should be compensated for reasonable expenses incurred in litigating their claim."). The Court finds that the amounts requested by Jane, on John's behalf, predominately for travel expenses associated with the trial, are reasonable.

 The Court denies Plaintiffs' request for expert witness fees, though not for the reasons proffered by Keala.[24] Sec-

22. The Special Master did not state exactly how much was deducted from Plaintiffs' requested costs on account of "copying costs." *See* Report at 34. The Court calculates the amount deducted by the Special Master as $1,606.50 by subtracting the deductions in the amounts of $8,033.08 (Knight Services), $1,082.00 (Video Teleconferencing) and $877.50 (Litigation Support) from $11,599.08, the total reduction made by the Special Master.

23. The Court notes that secretarial services is commonly included in an attorneys' hourly rate. However, *Burt v. Hennessey,* 929 F.2d 457, 459 (9th Cir.1991), sanctions reimbursement for secretarial costs. Moreover, the Court notes that Attorney Feldman's requested hourly rate of $140 is fairly low in comparison with other attorneys of similar experience in the community.

Expense reported by Attorney Feldman for paralegal services, however, will be reduced by the percentages applied with respect to the attorneys' fees analysis as they are not different than the services provided by paralegal Ellis and paralegal fees are calculated the same as attorney fees. *See Missouri v. Jenkins,* 491 U.S. 274, 288–89, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989); *see also Harris,* 24 F.3d at 19 (affirming 50% reduction of attorneys' and paralegal fees based on the "results obtained"). The allowable paralegal expense ($365.62) is included in the lodestar amount and the total expense reported for paralegal time ($812.50) is correspondingly deducted from Plaintiffs' cost request. See Appendix C.

24. The Court is duty-bound to review the Special Master's legal conclusions de novo. *See Wallace v. Skadden, Arps, Slate, Meagher & Flom, LLP,* 362 F.3d 810, 816–17 (D.C.Cir.

tion 1988 does not include fees paid for expert witnesses in civil rights litigation brought pursuant to Section 1983. *See Gates,* 987 F.2d at 1407 ("In *Casey,* the Court held that § 1988 does not convey authority to shift expert fees in civil rights litigation to the losing party and that when experts appear for trial they are eligible for the fee provided by 28 U.S.C. §§ 1920 and 1821, but that the prevailing party may not be awarded more than this amount for expert witnesses' trial testimony and is not entitled to anything for services rendered by experts in a nontestimonial capacity."). Title 42, U.S.C. Section 1988(c), which provides district courts with discretionary authority to include expert fees in awarding an attorney's fee under Section 1988(b), expressly applies to enforcement of Section 1981 or 1981a only. *See* 42 U.S.C. § 1988(c); *see also Connor v. Ulrich,* 153 F.Supp.2d 199, 204 (E.D.N.Y.2001) ("Section 1988 does not 'convey the authority to shift expert fees to the losing party.' *Wilder v. Bernstein,* 975 F.Supp. 276, 287 [S.D.N.Y.1997] (noting that although the Civil Rights Act of 1991 amended 42 U.S.C. § 1988 to give courts discretion to award expert fees in Section 1981 cases, did not extend that discretion to Section 1983 cases)"). Plaintiffs have not moved for expert witness fees pursuant to 28 U.S.C. Section 1920 or Section 1821. Thus, the Court will deduct from the cost award expert witness fees advanced by Plaintiffs' counsel. *See* Appendix C.

2004) (reversing and remanding district court's adoption of special master's report following parties' failure to file timely objections on grounds that "[u]nder Fed.R.Civ.P. 53 ... it was the district court's duty ... to review the special master's legal conclusions *de novo,* and to review the special master's findings of fact for clear error") (internal citations omitted).

Plaintiffs request a total of $52,609.32. The Court deducts $24,511.85 for expert witness fees and $812.50 for paralegal cost from this total for the reasons explained above. *See* Appendix C. Accordingly, the Court finds that Plaintiffs are entitled to a total of $27,284.97 in costs.

## IV. KEALA'S BILL OF COSTS AND PLAINTIFF'S MOTION TO STRIKE KEALA'S BILL OF COSTS

Keala argues that he is entitled to costs based on the cost-shifting mechanism of Rule 68. The Special Master, having concluded that Keala's reliance on the Offer of Judgment was misplaced, recommends that the Keala's Bill of Costs be denied. For the reasons discussed *supra,* the Court agrees with the Special Master that under the circumstances of this case, the cost-shifting mechanism of Rule 68 does not apply. Accordingly, the Court denies Keala's Bill of Costs. Consequently, the Court agrees with the Special Master that the denial of Keala's Bill of Costs moots Plaintiffs' Motion to Strike Keala's Bill of Costs.

## CONCLUSION

Based on the foregoing, the Court GRANTS Plaintiffs' Motion for Attorneys' Fees and Costs filed July 15, 2004. The Court finds that Plaintiffs are entitled to a total of $98,582.34[25] in attorneys fees and $27,307.37 in costs. The Court DENIES Defendant David Keala's Bill of Costs filed July 9, 2004.[26] The Court finds that the

**25.** This figure includes the lodestar amount ($95,950.79), *see supra* Section II.C., and fees awarded in connection with Plaintiffs' Motion for Attorneys' Fees ($2,631.55). *See supra* Section II.E.

**26.** This figure includes costs awarded in connection with the litigation generally ($27,-284.97), *see supra* Section III, and in connection with Plaintiffs' Motion for Attorneys' Fees ($22.40). *See supra* Section II.E.

cost-shifting mechanism of Rule 68 does not apply under the circumstances of this case. Finally, the Court DENIES Plaintiffs' Motion to Strike Defendant David Keala's Notice of Bill of Costs filed August 2, 2004 as being moot.

IT IS SO ORDERED.

## APPENDIX A
### *Hours Reduced Based on Insufficient Documentation/Lack of Detail*

**Shelby Floyd**

| Date | Hours | Description |
|------|-------|-------------|
| 6/21/01 | 0.7 | "telephone conference with Edie; telephone conference with Edie and fax to Duffy; research Wrightslaw for decisions" |
| 7/27/01 | 0.1 | "e-mail to E. Feldman" |
| 9/10/01 | 0.1 | "telephone conference with E. Feldman" |
| 9/27/01 | 0.2 | "review incoming correspondence" |
| 10/08/01 | 0.2 | "telephone conference with E. Feldman" |
| 10/19/01 | 0.1 | "telephone call to G. Hynds, Esq." |
| 10/26/01 | 0.1 | "telephone call to G. Hynds, Esq." |
| 1/24/02 | 0.1 | "telephone conference with E. Feldman, Esq." |
| **TOTAL** | 1.6 | |

**Stanley Levin**

| Date | Hours | Description |
|------|-------|-------------|
| 4/02/02 | 0.3 | "various tel. confs. with Edie Feldman" |
| 7/15/03 | 0.3 | "tel. conf. with Edie" |
| 7/17/03 | 0.4 | "Tel. confs. with Edie and with Charles Fell" |
| 10/22/03 | 0.4 | "ADDITIONAL TEL. CONFS. WITH EDIE AND TEL. CONFS. WITH JAN KNIGHT" |
| 10/24/03 | 0.8 | "additional research" |
| 11/05/03 | 2.6 | "REVIEW OF EMAILS W/ EDIE; ANALYZE THE CIRCUIT IN CASE; TEL. CONFS W/ EDIE AND OTHERS" |
| 11/18/03 | 2.9 | "Exchange of emails w/ Edie; prep of motion and research for memo; tel. conf. w/ Cregor" |
| 12/16/03 | 1.40 | "Meeting with Edie; emails to and from Edie" |
| 2/01/04 | 2.70 | "Gathering and reviewing materials; exchange of emails with Edie" |
| 3/16/04 * | 2.4 | "review of exhibits in prep for mtg ours and theirs" |
| 6/14/04 | 2.0 | "meet with Edie" |
| 6/14/04 | 1.5 | "misc. time spent on witness order and similar issues" |
| Total | 17.7 | |

**Edie Feldman**

| Date | Hours | Description |
|------|-------|-------------|
| 7/12/04 * | 7.5 | "Prepare tiem [sic] entry for pleadings files from 1999 through 2001" |
| 7/13/04 * | 7.0 | "Prepare time entry for pleadings from 2001 through June 2003" |
| 7/14/04 * | 10.0 | "Prepare entries for pleadings from 7/03 through 7/04; input costs incurred (expert fees, outside copying, messengers, postage, etc.); input charges for photocopying, facsimiles, long distance phone calls; prepare entries for meetings, corres., and t/cs" [1] |

---

1. Time not sufficiently detailed also would be omitted due to clerical nature of work performed.

| TOTAL | 24.5 |
|-------|------|

## APPENDIX B
### Excessive or Unnecessary Hours

**Shelby Floyd**

| Date | Hours | Description |
|------|-------|-------------|
| 6/12/01 | 0.1 | "arrange travel for settlement conference" |
| 7/24/01 | 0.1 | "make flight reservations" |
| Total | 0.2 | |

**Stanley Levin**

| Date | Hours | Description |
|------|-------|-------------|
| 7/16/03 | 0.5 | "Tel. confs. with Edie (.2); Mark Bennett (.10) about mediation" (0.8) [1] |
| Total | 0.5 | |

**Edie Feldman**

| Date | Hours | Description |
|------|-------|-------------|
| 4/11/03 | 4.5 | "Revise and edit Answering Brief in light of suggestions by Attorney Levin" [2] |
| 3/24/04 * | 0.7 | "Review David Keala's objections to admissibility of Exhibits 1–35; review David Keala's objections to exhibits 36–62; review exhibits and evaluate; research federal rules of evidence re: objections to documents relied upon by experts" (2.7) |
| 5/09/04 * | 2.0 | "Research Hawaii law re: jury instructions on assault and battery, negligent infliction of emotional distress, false imprisonment, loss of consortium and punitive damages; prepare proposed jury instructions." (4.5) |
| 5/24/04 * | 2.0 | "T/C w/ J. Kay's law clerk re: review of J. Kay's instructions online; Rx J. Kay's general instructions; Rx 9th Cir. model jury instructions; Rx Fed. Civ. Instructions; Rx HI Civil Instructions; prepare revised jury instructions." (4.6) |
| 6/07/04 * | 2.0 | "Review exhibits and summary of transcripts to prepare opening statements; select exhibits to be used during opening; meet with client; telephone call to Dr. Connelly re: del;ay [sic] in calling her as witness" (8.0) |
| 7/11/04 * | 2.0 | "Research entitlement to attorney's fees under section 1988 in Hawaii District and 9th Circuit; prepare motion for attorney's fees and memorandum of law in support of motion and revise." (4.5) |
| Total | 13.2 | |

**Bruce Ellis**

| Date | Hours | Description |
|------|-------|-------------|
| 3/03/04 * | 1.00 | "Preparation, travel and attendance at further settlement conference with Judge Chang" |
| 6/22/04 * | 1.00 | "Travel [sic] and from attendance at court for jury instructions with Judge Kay" |

1. The Court reduces the entry of 0.8 hours by 0.5 hours because the time noted by Attorney Levin totals 0.3 hours, not 0.8 hours.

2. It appears that these revisions were made after Attorney Feldman attended the hearing/oral argument on the appeal to the Ninth Circuit. *See* Exhibit 3 to Plts' Mot. for Attorney's *Fees and Costs* at 26 (time entry for 11/07/02).

| Total | 2 |
|-------|---|

## APPENDIX C
### Plaintiffs' Costs

**Expert Witness Fees**

| Date | Description | Amount |
|------|-------------|--------|
| 11/30/99 | "Fee for Dr. Robert Marvit for review of records of Justin Kaupe" | $ 300.00 |
| 4/05/00 | "Invoice from Robert C. Marvit, M.D. for Chart No. FELED000 for services rendered for 3/2000" | $ 1,225.00 |
| 11/30/00 | "Invoice from Robert C. Marvit, M.D., Inc. for Chart No. FELD000 for services rendered from 3/2000 through 9/2000" | $ 550.00 |
| 8/26/02 | Beverly James | $ 4,412.50 |
| 1/24/01 | "Check no. 790 for payment of records review and report by Dr. Robert Patterson." | $ 1,000.00 |
| 1/29/03 | Barbara Bateman | $ 180.00 |
| 1/05/04 | Beverly James | $ 968.24 |
| 7/13/04 | Robert Patterson, Psy.D. | $ 4,462.91 |
| 7/13/04 | Robert C. Marvit, M.D., Inc. | $ 2,080.00 |
| 7/13/04 | Beverly James | $ 5,333.20 |
| 7/13/04 | Nelson Lugo, M.D. | $ 4,000.00 |
| | **TOTAL** | **$24,511.85** |

**Paralegal Cost Reported by Attorney Feldman**

| Date | Description | Amount |
|------|-------------|--------|
| 6/03/04 | "Paralegal Support for preparation of Witness Binders, update Pleadings files, prepare packets for trial" | $ 125.00 |
| 6/15/04 | "Paralegal Support—2 hours for review of deposition transcripts of David Keala for cross examination questions in both USDC and Second Circuit Cases." | $ 50.00 |
| 6/15/04 | "Paralegal services: Review Discovery Documents and create table of relevant facts for Keala; Review and Summarize Depo of Keala" | $ 100.00 |
| 7/14/04 | "Payment to Legal Asst. Maddy Aho for assistance in calculating billable hours, input of time entries, and calculation of costs" | $ 537.50 |
| | Total Litigation Support | $ 812.50 |
| | less 55% | $ 365.25 |